**Salem**

INARA BENITA ASTER

v.

ALTON FRANK GROSS

No. 0524-87-3

Decided September 6, 1988

2

COUNSEL

Sylvia Clute and Zephia B. Scarborough (Clute & Shilling, on brief), for appellant.

Frank O. Meade (Meade, Tate & Daniel, P.C., on brief), for appellee.

OPINION

MOON, J. — Inara Benita Aster[1] seeks reversal of an equitable distribution award. She contends that the trial court erred by (1) valuing the husband's pension plan at the date nearest the filing of the complaint, rather than the date nearest the equitable distribution hearing; (2) prohibiting her from submitting further evidence relating to the appellee's adulterous conduct; (3) improperly qualifying William Joe Foster as an expert witness; and (4) granting an unfair and inequitable award. The appellee alleges cross-error by asserting that the trial judge incorrectly determined the value of appellee's orthopedic practice. We reverse the award because we find that the trial court should have valued the appellee's pension and profit sharing plans as of the date nearest the equitable distribution hearing. However, we hold that the trial court properly determined all other questions presented.

Dr. Gross, the appellee and an orthopedic surgeon, and Mrs. Gross married in 1961 and lived together until November of 1983. They raised two children and enjoyed a high standard of living. After the first two years of the marriage, Mrs. Gross was not employed outside the home and made no monetary contributions to the acquisition of marital assets. A decree entered in December, 1986 granted the couple a divorce on the ground of one year's separation. However, the decree included a stipulation that Dr. Gross was legally at fault in the dissolution of the marriage.

In the final order of January 7, 1987, awarding equitable distribution, the trial judge noted that Dr. Gross possessed marital property worth $213,032, while Mrs. Gross possessed marital property worth $50,676. The judge ordered a lump sum monetary award of $40,500 to Mrs. Gross and thereby provided her with roughly a thirty-five percent share of the marital property. Mrs. Gross also was awarded twenty percent of Dr. Gross' pension and profit sharing plans.

---

[1] By order dated December 27, 1986, the trial court granted the appellant's petition to change her name from Inara Benita Austers Gross to Inara Benita Aster.

We turn first to the question of the appropriate date for valuing the pension and profit sharing plans. The record indicates that as of September 30, 1983, near the date of the filing of the bill of complaint, Dr. Gross' pension plan had a value of $239,431.62, while his profit sharing plan had a value of $275,456.38. At the trial on December 22, 1986, Deborah Crowder, a trust officer at First Virginia Bank, testified that as of September 30, 1986, Dr. Gross's pension plan had a value of $354,415.74 while his profit sharing plan had a value of $418,691.92. Crowder explained that her computations reflected only the investment gains on the base amount Dr. Gross owned as of September 30, 1983. The computations did not include any additional contributions made after that date. In the final decree, the trial court employed the 1983 values for the purposes of distributing the pension and profit sharing plan. We believe that the court should have adopted the valuation date closest in time to the equitable distribution hearing.

Prior to a 1988 amendment to Code § 20-107.3, the equitable distribution statute did not provide a valuation date for marital property.[2] Code § 20-107.3. However, in *Mitchell v. Mitchell*, 4 Va. App. 113, 355 S.E.2d 18 (1987), we promulgated the guiding principles for determining the date of valuation:

> [F]or the purposes of making a monetary award a trial court should determine the value of the parties' assets as of a date as near as practicable to the date of trial; except that, the trial court in its decree may value all or any part of the assets as of a date after the separation of the parties if necessary to arrive at an award more consistent with the factors enumerated in Code § 20-107.3.

*Id.* at 118, 355 S.E.2d at 21. The opinion in *Mitchell* noted that certain circumstances may render a trial date valuation inequitable. However, none of the circumstances mentioned in *Mitchell*, such as deliberate dissipation of the assets by one spouse, are present under the facts at bar. We have also explained in *Price v.*

---

[2] Effective July 1, 1988, Code § 20-107.3(A), in pertinent part, provides:
The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue. Upon motion of either party made no less than twenty-one days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

*Price*, 4 Va. App. 224, 355 S.E.2d 905 (1987), that the trial date "may be the most practical and suitable valuation date in most instances," *id*. at 232, 355 S.E.2d at 910, and that the choice of valuation date rests within the sound discretion of the trial judge. *Id*. at 232, 355 S.E.2d at 910-11.

We adhere to our past rulings that a date nearest the trial normally should be used for the valuation of marital property. Since no evidence in this record justifies the selection of another date, we hold that the trial judge abused his discretion by failing to adopt the date nearest to trial for purposes of valuation.

Ms. Aster also contends that the trial judge abused his discretion by awarding her only twenty percent of the pension and profit sharing plans. Her reliance on *Artis v. Artis*, 4 Va. App. 132, 354 S.E.2d 812 (1987), is misplaced. In *Artis*, this court overturned a decree which awarded the wife fifteen percent of the husband's military retirement pay. Significantly, the husband in *Artis* had stipulated that the parties' contributions to the general welfare of the family and to the accumulation of marital assets were equal. In the absence of any such stipulation under the facts at bar, we cannot say that the trial judge abused his discretion by awarding Ms. Aster twenty percent of the pension and profit sharing plan.

Next, we consider the trial court's refusal to allow Ms. Aster to submit additional evidence relating to Dr. Gross's alleged adulterous conduct. On December 9, 1986, Ms. Aster moved to amend her bill of complaint to allege that Dr. Gross had committed adultery with seven different persons. After Dr. Gross conceded that he was at fault in the marriage's dissolution, the trial court refused to hear additional evidence of adultery.

To comply with Code § 20-107.3(E)(5) a court must consider all circumstances that led to the dissolution of the marriage insofar as those circumstances are relevant to a monetary award. Equitable distribution is predicated upon the philosophy that marriage represents an economic partnership requiring that upon dissolution each partner should receive a fair portion of the property accumulated during the marriage. L. Golden, *Equitable Distribution of Property* § 8.13, p. 255 (1983). Therefore, circumstances that affect the partnership's economic condition are factors that must be considered for purposes of our equitable distribution scheme. Circumstances that lead to the dissolution of the mar-

riage but have no effect upon marital property, its value, or otherwise are not relevant to determining a monetary award, need not be considered. A trial court need only consider those circumstances leading to the dissolution of the marriage, that are relevant to determining a monetary award in order to avoid an unreasonable result.[3]

■ Applying these principles to the facts at bar, Ms. Aster's allegations of marital misconduct bore no relation to the value of the parties' marital assets. Furthermore, the trial court did not have to consider each of the specific instances of fault to render a reasonable award. The trial court did consider fault and the circumstances that led to the dissolution of the marriage in making its monetary award. It was not required to consider the specifics of every possible ground of divorce. Ms. Aster does not assert that the multiple acts of adultery resulted in adverse economic consequences to the parties. Fault in the dissolution of the marriage represents only one of the factors listed in Code § 20-107.3 and should not be used to punish economically either of the parties to the marriage.

Therefore, we conclude that the trial court did not abuse its discretion in refusing to permit Ms. Aster to amend the bill of complaint and submit evidence pertaining to Dr. Gross's misconduct. When there is no suggestion that the additional acts of misconduct added to the economic consequences caused by the dissolution of the marriage, the evidence is irrelevant to the determination of a monetary award.

We next consider the trial court's ruling that William Joe Foster qualified as an expert competent to value Dr. Gross's share in his orthopedic clinic. The evidence was conflicting concerning the valuation of the practice. Two witnesses, whom the commissioner and the court recognized as experts, testified as to the value of Dr. Gross's share in the clinic. Foster placed the value at

---

[3] The subcommittee studying the 1982 amendments that form the basis of our current equitable distribution statute considered fault and concluded:

The members, after lengthy discussion, decided that to allow fault to serve as an absolute bar to the monetary award would defeat the equitable purpose of this section. However, to avoid unreasonable results in situations involving fault, the circumstances contributing to the dissolution of the marriage, specifically including any ground for divorce, have been included among the factors for consideration in the court.

$31,000. Ms. Aster's witness, Louis Einwick, Jr., placed the value at $280,000. The trial court valued Dr. Gross's interest in the clinic at $121,000.

William Joe Foster is a certified public accountant who performed accounting services for Dr. Gross' Orthopedic Clinic since 1977, when he first began practicing accounting. Before the commissioner, he related his experiences in drafting buy-sell agreements for doctors who had left Dr. Gross's clinic and sold their shares to the remaining members. He testified that he had performed valuations of two to four other businesses in the Danville area. Mr. Foster also explained that he was familiar with documents from the Internal Revenue Service detailing formulas for valuing businesses. Ms. Aster argues that Foster made no provision for goodwill and did not know how to value the clinic's patient charts. She also points out that Foster initially did not consider the value of the clinic's accounts receivable.

■ Whether a person has sufficient expertise in the field to testify as an expert in a case rests generally within the discretion of the trial judge. *Jordan v. Commonwealth*, 207 Va. 591, 598, 151 S.E.2d 390, 395 (1966). A witness who has "sufficient knowledge of his subject to give value to his opinion" may testify as an expert. *Norfolk & Western Railway v. Anderson*, 207 Va. 567, 571, 151 S.E.2d 628, 631 (1966). "All that is necessary is that he be better qualified than the jury to form an inference from the facts." C. Friend, *The Law of Evidence in Virginia* § 215, p. 461 (2d ed. 1983). We believe that the trial court did not abuse its discretion in sustaining the qualifications of Foster as an expert witness. While Foster may not have possessed the experience and sophistication of Ms. Aster's expert, his experience was not so meaningless that we can say the trial court abused its discretion by qualifying him as an expert.

■ Ms. Aster also argues that the trial court erred by entering a monetary award which was unfair and inequitable in consideration of the factors set forth in Code § 20-107.3(E)(1)-(11). Although on remand the trial court will consider the monetary award, we deem it necessary to answer for the trial court whether an award of a disproportionate percentage of retirement benefits to one party will, on its face, be error. Ms. Aster maintains that her award of only thirty-five percent cannot withstand appellate scrutiny. In *Papuchis v. Papuchis*, 2 Va. App. 130, 132, 341

S.E.2d 829, 830 (1986) we held that Code § 20-107.3 contains no presumption favoring equal division of marital property. Moreover, in reviewing an equitable distribution award, we rely heavily on the trial judge's discretion in weighing the particular circumstances of each case. *Rexrode v. Rexrode*, 1 Va. App. 385, 394-95, 339 S.E.2d 544, 550 (1986). Only under exceptional circumstances will we interfere with the exercise of the trial judge's discretion. *Artis*, 4 Va. App. at 137, 354 S.E.2d at 815. Under the facts at bar, we hold that the trial court acted well within its discretion in light of Dr. Gross's substantial monetary contributions to the marriage. Thus, while the disproportionate percentage award of pension benefits was not error, the trial court will be required to readdress the question as part of its reconsideration of its monetary award.

Finally, Ms. Aster argues that the trial court erred by refusing to formalize in its final decree a stock transfer agreement between the parties. Code § 20-107.3(H) provides: "Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties pursuant to §§ 20-109 and 20-109.1." Code § 20-109.1 empowers a court to affirm, ratify or incorporate by reference into a final order any valid agreement by the parties. Under the record before us, however, we find no evidence that Ms. Aster petitioned the court to include any stock transfer agreement in the final order. Moreover, we find no evidence that Ms. Aster objected to the trial court's failure to incorporate the agreement into the order. Therefore, pursuant to Rule 5A:18, we will not consider Ms. Aster's contentions.[4]

By way of cross-error, Dr. Gross argues that the trial court incorrectly valued his interest in the orthopedic clinic at $121,000. As noted earlier, Dr. Gross's expert testified that Gross's share in the clinic had a value of $31,000, while Ms. Aster's expert valued Dr. Gross's share at $280,000.

---

[4] We note that if the parties had actually entered into a stock transfer agreement, the agreement's enforceability would not depend on whether the terms were incorporated into the final order. *Parra v. Parra*, 1 Va. App. 118, 129, 336 S.E.2d 157, 163 (1985). Moreover, on remand, if the court determines that the agreement was valid, then the court may not enter an equitable distribution award that contravenes the agreement. *Id.* at 130, 336 S.E.2d at 163.

Code § 20-107.3 requires the court to determine the ownership and value of all real and personal property of the parties. Given the complexity inherent in rendering these determinations, we rely heavily on the trial court's discretion. In the case before us, the trial court balanced the opinions of the experts and rendered a decision. We cannot say that a decision that chooses a middle route between two expert opinions is so without factual basis as to constitute an abuse of discretion. Therefore, we hold that the trial court properly valued Dr. Gross' interest in the orthopedic clinic.

For the reasons stated, the judgment is reversed and the cause remanded for a redetermination of the equitable distribution award consistent with this opinion.

*Reversed and remanded.*

Koontz, C.J., and Coleman, J., concurred.