COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Coleman and Fitzpatrick
Argued at Richmond, Virginia

ANTOINETTE J. FERRIS

v.          Record No. 1617-94-2          MEMORANDUM OPINION[*] BY
                                          JUDGE JOHANNA L. FITZPATRICK
CHARLES W. FERRIS, III                          MARCH 5, 1996

              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      William R. Shelton, Judge

        James Emmett Anderson, for appellant.

        Denis F. Soden (Michael S. Huberman;
        Spinella, Owings & Shaia, on brief), for
        appellee.


        In this domestic appeal, Antoinette J. Ferris (wife) argues
that the trial court erred in:  (1) awarding wife only twenty
percent of the marital assets; (2) ordering wife to reimburse
Charles W. Ferris, III (husband) for payments made by husband on
marital assets during the pendency of the divorce; (3)
classifying the parties' antique wooden bed as husband's separate
property; (4) refusing to grant wife a continuance; (5) excluding
husband's retirement plans from the marital estate and failing to
award wife a percentage of those plans; (6) valuing the parties'
condominium at the tax assessment value; (7) ordering wife to pay
husband twenty percent of the negative equity in the parties'
condominium; and (8) failing to award wife spousal support and
attorney's fees.  For the reasons that follow, we affirm the

--------
        [*]Pursuant to Code § 17.116.010 this opinion is not
designated for publication.

trial court.

## BACKGROUND

The parties married on July 8, 1988 in Chesterfield County. After the marriage, wife adopted husband's daughter, Betsy, and husband adopted wife's daughter, Rachel. The parties separated on January 23, 1992, when husband left the marital residence.

Before the marriage, wife worked full time as a hairdresser and earned $20,000 in 1987. Her assets included a 1988 Ford Escort and some antique furniture. Husband worked as an engineer for C&P Telephone Co., earning a salary of $56,000 per year. Husband's assets at the time of the marriage included a house on Ewes Court in Richmond, assessed at $112,200; a stock option plan; a 401(k) plan; a Bell Atlantic retirement plan; and insurance proceeds and settlement proceeds of over $490,000 received after the death of his first wife.

During the marriage, the parties acquired three additional properties: a house on Stuart Avenue in Richmond, assessed at $216,000; a condominium in Ocean View, assessed at $79,470; and a lakefront property in Louisa County, assessed at $108,000. Both parties purchased the Stuart Avenue and Louisa County properties and owned them as tenants by the entirety. Husband began purchasing the condominium before the marriage, and the original deed of trust is solely in his name. After the marriage, husband gifted the condominium to himself and wife as tenants by the entirety.

Husband was the primary source of income, and wife maintained the household and cared for the children. After quitting her full-time job in August 1988, wife continued to work part time at home. Husband testified that she made between $150 to $200 per month cutting hair at home while wife testified that she brought in about $500 per month. Wife also participated in renovating the Stuart Avenue house.

After the parties separated, husband continued making mortgage, insurance, tax, and utility payments on the parties' properties. Husband testified that the mortgage obligations alone totaled over $70,000 during the period of separation. Additionally, husband paid off the parties' credit card debt, which totaled over $7,300. Although wife did not make any mortgage, insurance, or tax payments, she paid utility bills on the Stuart Avenue property, where she was living, beginning in June 1992. She also paid some utility bills on the Louisa County and Ocean View properties. After the parties separated, wife obtained full-time employment at a car dealership, where she averages $1,100 per month.

Husband presented numerous exhibits detailing the parties' assets. Husband estimated that his monetary contributions represented ninety-seven percent of the total financial contributions and that his nonmonetary contributions were sixty-one percent. Husband's nonmonetary contributions included performing repairs on the parties' properties, keeping financial

3

records, helping the children with their homework, and helping the children get ready for bed and school. Wife's testimony was that her nonmonetary contributions to the marriage included housekeeping, child care, and helping to renovate the parties' Stuart Avenue home.

In a letter opinion dated February 1, 1994, the trial court awarded husband a divorce based on separation for more than one year; granted husband eighty percent and wife twenty percent of the marital assets; ordered wife to pay twenty percent of the negative equity on the Ocean View condominium; ordered wife to reimburse husband for fifty percent of maintenance payments made during the pendency of the divorce; and awarded husband his 401(k) plan and Bell Atlantic retirement plan. In a July 25, 1994 order, the trial court offset the sums owed by wife against her twenty percent share of the marital estate; credited her with one-half of the tax benefits on the marital property and the utility bills she paid; and ordered husband to pay wife a monetary award of $16,370.55.

## DIVISION OF MARITAL ASSETS

Wife argues that the trial court erred in awarding her only twenty percent of the marital assets in light of her substantial contributions to the marriage.

In dividing marital property and determining the amount of any monetary award, the trial court must consider the factors in Code § 20-107.3(E). Alphin v. Alphin, 15 Va. App. 395, 403, 424

4

S.E.2d 572, 576 (1992).  "Unless it appears from the record that the chancellor has abused his discretion or has failed to consider or has misapplied one of the statutory factors, his determination will not be reversed on appeal."  Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990).  Virginia law does not require an equal division of marital assets.  Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986).

In this case, the record supports the trial court's division of the marital property--eighty percent to husband and twenty percent to wife.  The duration of this marriage was only three-and-one-half years.  The evidence established that husband's monetary contributions to the marriage and the acquisition and maintenance of marital property were substantially greater than wife's.  Specifically, husband contributed significant amounts of his separate property to buy the Stuart Avenue house, the Louisa County house, and the Ocean View condominium.  Husband's nonmonetary contributions to the marriage were also significant in that he performed repairs, kept the parties' financial records, and also cared for the children.  Wife's monetary contributions to the marriage were minimal, and her nonmonetary contributions included caring for the children and performing household duties.  Under these circumstances, the trial court did not abuse its discretion in determining the weight to be accorded to the parties' contributions and in dividing the marital estate.

## REIMBURSEMENT OF POST-SEPARATION EXPENSES

Wife next argues that the trial court erred in ordering her to reimburse husband for fifty percent of mortgage, insurance, tax, and utility payments made by husband on marital property during the pendency of the divorce. We disagree.

A trial court must consider "[t]he contributions, monetary and nonmonetary, of each party in the acquisition and care and <u>maintenance</u> of such marital property of the parties" in determining the amount of any monetary award. Code § 20-107.3(E)(2) (emphasis added). Additionally, Code § 20-107.3(C) provides that the trial court has the "authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of marriage." No abuse of discretion occurred in this case because the trial court also credited wife with utility payments she made on the parties' properties in determining the amount of the monetary award. Wife's argument that husband used marital funds to pay post-separation expenses is without merit as the evidence clearly established that husband used his separate, post-separation earnings to make payments on the marital property.

## CLASSIFICATION OF ANTIQUE WOODEN BED

Wife asserts that the trial court misclassified an antique wooden bed owned by the parties.

On August 28, 1989, the parties purchased an antique wooden

bed from Gates Antiques for $3,807.50 with marital funds. Husband estimated the value of the bed at $3,500 and admitted that the bed was marital property. The trial court classified the bed as husband's separate property and awarded the bed to him. Additionally, during the marriage, husband bought wife a diamond ring for $8,710.32 on July 5, 1989, with marital funds. The trial court found that the ring was wife's separate property and awarded the ring to her.

"Property acquired during the marriage is presumed to be marital property, unless there is sufficient evidence that it is separate property." Lee v. Lee, 13 Va. App. 118, 121-22, 408 S.E.2d 769, 771 (1991). The trial court erred in classifying these properties as separate. The antique wooden bed and the diamond ring were clearly marital property because they were acquired during the marriage with marital funds and before the parties separated. However, the errors become harmless when viewed together, as the trial court awarded wife the value of the diamond ring, which exceeded that of the bed.

## DENIAL OF CONTINUANCE

Wife next contends that the trial court erred in refusing to grant a continuance so that wife's new attorney could prepare for the equitable distribution hearing.

The record establishes that the trial court approved the withdrawal of wife's first attorney on June 29, 1993. Wife did not hire another attorney until October 19, 1993, two weeks

7

before the equitable distribution hearing scheduled for November 3, 1993. In denying wife's attorney's request for a continuance of the trial date, the trial judge stated as follows:

> The Court has set deadlines, and the fact that you came into it late is an unfortunate one. If one party sits and doesn't do anything until the deadline and then gets it extended, we would never get anything done that way. . . . When you get into the case you have to be aware of the trial proceedings, pretrial orders that have been entered with reference to deadlines for putting in evidence, and if you can't comply with it, you ought not get into it.

"The decision whether to grant a continuance is a matter within the sound discretion of the trial court. Abuse of discretion and prejudice to the complaining party are essential to reversal." Venable v. Venable, 2 Va. App. 178, 181, 342 S.E.2d 646, 648 (1986). In the instant case, wife delayed for over three months after the withdrawal of her first attorney before retaining a new attorney. Her failure to designate a new attorney until immediately before the scheduled hearing resulted in the lack of preparation time, not the trial court's refusal to grant a continuance.

### EXCLUSION OF RETIREMENT PLANS FROM MARITAL ESTATE

Wife also argues that the trial court erred in excluding husband's 401(k) plan and Bell Atlantic retirement plan from the marital estate and in failing to award her a percentage of those plans.

Husband participated in a 401(k) plan with his employer both

8

before and during the marriage. Husband's evidence established that the value of the plan in December 1989 was $31,762.20 and that the value in December 1991 was $21,703.38. Thus, when the parties separated in January 1992, the plan had decreased in value approximately $10,000 due to the parties' withdrawal of $20,000 from the plan in 1991 to pay for household, tuition, and mortgage expenses. Husband's evidence also showed that his Bell Atlantic retirement plan increased in value approximately $8,200 between the date of marriage and the date of separation. Pursuant to Code § 20-107.3(G)(1), the trial judge found "it equitable to award the 401-K Plan and the Bell Atlantic Management Pension Plan to [husband]."

"Code § 20-107.3(G) provides that, upon consideration of the factors set forth in Code § 20-107.3(E), the court may direct payment of up to fifty percent of the 'marital share' of a party's pension [or retirement benefits]." Gamer v. Gamer, 16 Va. App. 335, 342, 429 S.E.2d 618, 624 (1993) (emphasis added). This Court relies "on the trial judge's discretion in weighing the particular circumstances of each case" in determining whether a distribution of pension assets is fair. Aster v. Gross, 7 Va. App. 1, 7-8, 371 S.E.2d 833, 837 (1988).

Although husband's pension assets were not specifically listed as marital property, neither were they classified as husband's separate property. The trial judge's treatment of husband's pension assets in a separate paragraph of his letter

9

opinion was done in a manner that indicated he considered husband's pension assets as marital property, but did not award wife a portion of them. Husband's evidence established that wife benefitted from the $20,000 withdrawn from his 401(k) account during the marriage and that his 401(k) plan decreased in value in excess of the increase in value of his Bell Atlantic retirement plan. Thus, the trial court did not err in failing to award wife an additional percentage of husband's pension assets.

## VALUATION OF OCEAN VIEW CONDOMINIUM

Next, wife contends that the trial court erred in valuing the Ocean View condominium at its tax assessed value of $79,470.

The evidence established that the tax assessment value of the condominium decreased from $114,000 in 1992 to $79,470 in 1993. In her deposition, wife testified that the parties purchased the condominium for $120,000 and that its value "might have stayed the same, but it wouldn't have gone down that severe." The only other evidence of the condominium's value in the record was a 1993 listing agreement with a realtor, indicating a sale price of $126,300.

In this case, the trial court was not plainly wrong in accepting the 1993 tax assessment value as evidence of the value of the condominium and in giving less weight to wife's testimony and the listing agreement. A party claiming an interest in marital property or claiming that the trial court erred in evaluating an item of marital property has the duty to prove the

10

value of the property.  See Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987).  Wife offered no reliable evidence of value and did not object to using the tax assessment value for other marital property.

## MORTGAGE ON OCEAN VIEW CONDOMINIUM

Husband's evidence proved that the Ocean View condominium had a tax assessment value of $79,470 in 1993 and an outstanding mortgage with a principal balance of $91,748.42.  Thus, the negative equity in the condominium was approximately $12,278. The parties owned the condominium as tenants by the entirety, and each assumed the risk that the asset might increase or decrease in value during the marriage.

The trial court accepted husband's value of the condominium and determined that the negative equity in the condominium should be apportioned between the two parties.  Because the court had the authority to divide "the debts of the parties . . . incurred prior to the dissolution of marriage," Code § 20-107.3(C), it did not err in finding that wife was responsible for twenty percent of the negative equity in the condominium.

## FAILURE TO AWARD SPOUSAL SUPPORT OR ATTORNEY'S FEES

Wife contends that the trial court erred in failing to consider her request for spousal support and in denying her attorney's fees.  She also argues that the trial court should have considered husband's adulterous behavior in determining spousal support and her inability to pay her attorney's fees.

11

In wife's cross-bill of November 1992, she requested spousal support and attorney's fees. However, at the final hearing held November 3, 1993, wife failed to request the trial court to award spousal support or attorney's fees. In arguing attorney's fees, wife's counsel acknowledged that "[t]he parties should bear their own expenses." Wife requested the Louisa County property and $50,000 cash as a "fair resolution of this case." In its letter opinion of February 1, 1994, the trial court ruled that the parties were responsible for their own attorney's fees and did not address the issue of spousal support. Wife filed exceptions to the letter opinion on April 26, 1994, and objected to the court's failure to award spousal support and attorney's fees.

We hold that the trial court did not err in failing to award wife spousal support or attorney's fees. At the final hearing, wife failed to raise the specific requests or arguments she now raises on appeal. See Rule 5A:18. She did not request either spousal support or a reservation of support. Concerning attorney's fees, wife acknowledged the parties' responsibility to bear their own expenses in arguing against husband's request for attorney's fees.

Additionally, the record contains insufficient evidence to determine wife's entitlement to spousal support and attorney's fees. In determining spousal support, a trial court must consider "[t]he earning capacity, obligations, needs and financial resources of the parties." Code § 20-107.1(1). Wife

failed to present any evidence of her expenses and how much support she needed.  She also failed to present any evidence of the amount of attorney's fees incurred.

## MOTION FOR SANCTIONS

In relation to this appeal, wife filed a motion for sanctions against husband pursuant to Rule 5A:25(g), arguing that husband designated unnecessarily several hundred pages of irrelevant documents for inclusion in the appendix.  We deny the motion because the pages designated by husband were clearly relevant to issues on appeal.

Accordingly, the decision of the trial court is affirmed.

<u>Affirmed</u>.