COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Frank and Petty
Argued at Salem, Virginia

JOHNNY LEIGH CRATER

MEMORANDUM OPINION[*] BY
v.      Record No. 1933-12-3                              JUDGE ROBERT P. FRANK
                                                              JUNE 11, 2013
FRANCES JEAN BLEVINS CRATER


FROM THE CIRCUIT COURT OF CARROLL COUNTY
Brett L. Geisler, Judge

Alan K. Caudell for appellant.

Monica Taylor Monday (Jonathan L. McGrady; Gentry Locke
Rakes & Moore; McGrady & McGrady, on brief), for appellee.


Johnny Leigh Crater ("husband") appeals the trial court's award of equitable distribution.

On appeal, he argues the trial court erred in: 1) giving undue consideration to his relationship

with his wife and stepdaughter; 2) awarding fifty-five percent share of the marital property to

Frances Jean Blevins Crater ("wife"); 3) refusing to accept his testimony that certificates of

deposit and a Farm Bureau IRA account were his separate property; and 4) finding that purchase

money for two tracts of land was marital property. Wife assigned cross-error to the trial court's

classification of Wachovia and Lincoln Financial assets as husband's separate property. Wife

also asks for attorney's fees on appeal. For the reasons stated, we affirm the trial court and

remand for an award of attorney's fees.

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

ANALYSIS

Fifty-five/Forty-five Division of Property

Husband's first two assignments of error challenge the trial court's equitable distribution award based on a fifty-five percent share to wife and a forty-five percent share to husband. Specifically, he asserts that the trial court gave improper and undue consideration and weight to husband's estranged relationship with his stepdaughter Heather, that the trial court erred in not giving husband credit for supporting Heather through her high school graduation, that the trial court erred in finding husband was not supportive of his relationship with his wife, and that the trial court did not consider that he was without fault in the dissolution of the marriage. He also challenges the trial court's finding that wife was fully devoted to the development of the dairy business. Essentially, husband contends there should have been an equal distribution of the marital assets. We see no merit to any of these contentions.

On appeal, we view the evidence in the light most favorable to wife, as the prevailing party below. Brown v. Burch, 30 Va. App. 670, 681, 519 S.E.2d 403, 408-09 (1999). "A decision regarding equitable distribution rests within the sound discretion of the trial court and will not be disturbed unless it is plainly wrong or without evidence to support it." Holden v. Holden, 31 Va. App. 24, 26, 520 S.E.2d 842, 844 (1999). "Unless it appears from the record that the trial judge has not considered or has misapplied one of the statutory mandates, this Court will not reverse on appeal." Id. at 27, 520 S.E.2d at 844.

Although the trial court must consider all factors set out in Code § 20-107.3(E), it "need not quantify or elaborate exactly what weight was given to each of the factors" as long as its "findings . . . [are] based upon credible evidence." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). "Virginia law does not establish a presumption of equal distribution of marital assets. It is within the discretion of the court to make an equal division or to make a substantially disparate

- 2 -

division of assets as the factors outlined in Code § 20-107.3(E) require." Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998) (citations omitted). "A circuit court, therefore, need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines." Robbins v. Robbins, 48 Va. App. 466, 480, 632 S.E.2d 615, 622 (2006) (affirming circuit court's use of "a 65/35 division of assets").

These statutory factors for consideration by the court include "[t]he contributions, monetary and nonmonetary, of each party to the well-being of the family;" "[t]he circumstances and factors which contribute to the dissolution of the marriage, specifically including any ground for divorce . . . ;" and "such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." Code § 20-107.3(E).

The parties were married June 20, 1987. Wife had a daughter, Heather, by a previous marriage who lived with them. At age seven, Heather pinched husband, angering him. Thereafter, he essentially discontinued his relationship with Heather, although he, along with the wife, continued to provide food, shelter, and clothing for her until she went to college. Husband admitted he never visited Heather in college nor did he attend her graduation. Husband told wife, early in the marriage, he did not like children. Heather was not able to participate in sports and extra-curricular activities in the evenings after school because wife milked the cows in the evening and husband refused to be a "taxi driver."

When Heather came home from college to visit, husband would move out of the marital residence to a garage three miles away from the residence.

When Heather went to college in 2000, husband demanded wife turn off the ringer on the telephone at night because it interfered with his sleep. Wife refused because Heather was three hours away and might need to contact her in case of an emergency. When asked "what if something bad happens to her," husband replied that the police "will come tell you."

Wife kept the ringer on and husband moved to the garage, living there for nearly two years. During this time, the parties communicated "with notes," mostly dealing with the operation of the dairy. They spoke very little. Wife stated she was brokenhearted by husband leaving.

Around 2003, husband moved back into the marital residence but moved into Heather's bedroom. Wife characterized the relationship as "we tolerated each other." Wife testified "[Husband] is the king of silent treatment" lasting a month or longer without speaking to her.

Wife asked husband to receive counseling but he refused.

After Heather graduated from college, she moved to Germany and wife had planned to visit her there. Husband became upset when he learned of the trip. At that point, wife realized husband would not change and would not accept her and Heather as a family.

On August 10, 2008 during an argument, husband said he would not change for anybody and stated, "You might as well pack your shit and leave." Wife left.

In his opinion letter of December 20, 2011, the trial court reviewed each factor of Code § 20-107.3(E) in fashioning an award of equitable distribution. The court specifically noted husband's minimal financial support of his stepdaughter when considering the monetary and non-monetary contributions of the parties.

As to the dissolution of the marriage, the trial court found the marriage had deteriorated and marital problems came to a head when husband insisted wife turn off the phone ringer at night. Husband then moved out of the marital residence and remained away for nearly two years. For several years prior to the August 2008 separation, the parties merely tolerated each other. They lived in separate bedrooms and never resumed the marital relationship. While both husband and wife were devoted to the dairy, husband was less than supportive in his relationship with the wife. Based on these factors, the trial court awarded fifty-five percent of the marital estate to wife and forty-five percent to husband.

Husband contends that neither his relationship with Heather nor his lack of support for wife fall within the Code § 20-107.3 factors. He also challenges the weight the trial court gave to those strained relationships.

In Barker v. Barker, 27 Va. App. 519, 539, 500 S.E.2d 240, 250 (1998), husband supported his stepchildren. We stated the court could consider husband's support for wife's children pursuant to two statutory provisions: (1) as a "contribution[], monetary and nonmonetary, of each party to the well-being of the family"; and (2) as an "other factor[] as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." Code § 20-107.3(E)(1), (10).

In his opinion letter, the trial court considered husband's lack of support for his stepdaughter pursuant to Code § 20-107.3(E)(1), monetary and non-monetary contributions. "Other than providing food, clothing and shelter, [husband] provided only a minimum of support for his stepdaughter." Pursuant to Barker, the trial court properly considered husband's relationship with Heather in fashioning the equitable distribution award, and the record supports the conclusions of the court. Husband provided mere basic financial support for Heather but treated Heather poorly. Husband's negative relationship with Heather and wife was a negative non-monetary contribution to the well-being of the family.

Husband next contends the trial court erred in the fifty-five/forty-five split because it based the final decree of divorce on no-fault grounds. This argument fails because Code § 20-107.3(E)(5) requires the court to consider the "circumstances and factors which contributed to the dissolution of the marriage." The same argument was rejected in Cousins v. Cousins, 5 Va. App. 156, 360 S.E.2d 882 (1987). Citing Bacon v. Bacon, 3 Va. App. 484, 490, 351 S.E.2d 37, 41 (1986), we stated "[t]his statute, by its plain language, does not limit the trial court to consider only the grounds upon which the divorce was granted." Cousins, 5 Va. App. at 158, 369 S.E.2d at 884. We explained that

circumstances and factors which may have contributed to the dissolution of a marriage, regardless of whether they constituted grounds for divorce, may be considered in weighing the equities between parties in determining the amount and method of making a monetary award. Id. at 158-59, 369 S.E.2d at 884. The statutory directive, specifically including any statutory ground for divorce, does not limit consideration to grounds for divorce. Id. at 159, 369 S.E.2d at 884.

Husband next contends that his leaving the marital home after Heather went to college should not be considered by the trial court in fashioning the award. Specifically, he contends wife condoned this behavior by allowing husband to return to the marital residence and living together for six years until the final separation. Husband cites no law to support this argument. See Rule 5A:20(e). Further, the trial court found that they never resumed the marital relationship. Thus, this argument fails.

Husband further maintains since he provided Heather with food, shelter, and clothing until she went to college, the trial court should have considered that support as a positive factor under Code § 20-107.3(E)(1), monetary contribution to the well-being of the family. Nothing in the record suggests the trial court did not consider the support of Heather. Rather, it appears husband challenges the weight given to the support in the division of the marital estate. See Watts v. Watts, 40 Va. App. 685, 698, 581 S.E.2d 224, 231 (2003) ("'[A]s long as the trial court considers all the [statutory] factors, it is at the court's discretion to determine what weight to give each factor when making the equitable distribution award.'" (quoting O'Loughlin v. O'Loughlin, 20 Va. App. 522, 526, 458 S.E.2d 323, 325 (1995))).

Husband next maintains that even if his poor relationship with his wife was a cause of the dissolution of the marriage, the trial court should not have considered it since it had no impact on the value of marital property. Husband cites Aster v. Gross, 7 Va. App. 1, 371 S.E.2d 833 (1988), for this proposition. Yet, in Ranney v. Ranney, 45 Va. App. 17, 46-47, 608 S.E.2d 485, 499 (2005),

we explained that factors and circumstances leading to the dissolution of the marriage may be considered even if those factors have no financial impact on the marriage.

Husband also challenges the trial court's finding that wife was fully devoted to the development of the dairy business. Essentially, husband challenges the trial court's factual findings. The trial court found that both parties contributed equally to the dairy and both benefitted financially from that operation, both investing their entire time and effort. Each worked to create and maintain the dairy, sacrificing personal time and luxuries. The trial court further concluded wife was a devoted wife, mother, and economic partner with husband and that she put 110% into the relationship. The record supports these findings. See Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992) ("Where, as here, the court hears the evidence *ore tenus*, its findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.").

We conclude the trial court did not abuse its discretion in fashioning a fifty-five/forty-five award. The trial court did not misapply any of the challenged factors of Code § 20-107.3(E). The factual findings pertaining to husband's strained relationship with Heather and wife were fully supported by the record.

Certificates of Deposit

Appellant's assignment of error three states,

> The Court erred in refusing to accept [husband's] testimony that the certificates of deposit valued at $81,604.40 and the Farm Bureau IRA account were separate property of the appellant. There is no conflicting evidence, and the Court should not accept the speculation of appellee as to the origin of said accounts over the direct testimony of appellant.

Husband asserts the trial court erred in refusing to accept his testimony that the certificate of deposit (CD) valued at $81,604.40 was his separate property. Essentially, he challenges the trial court's decision as to the weight of the evidence afforded his testimony. "[D]ecisions concerning

equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994). Moreover, "[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*).

When asked the origin of the CDs, husband responded, "I would say they came out of Wachovia . . . ," at best a vague response. There was no other testimony as to the source of the funds that purchased the CD, nor was there any corroboration of his statement. The only exhibit showing Wachovia transactions was Exhibit 12 which addressed Wachovia activity as of August 31, 2008.

Exhibit 15, a statement from Carter bank for the period ending December 31, 2008, indicated the existence of three CDs. One CD with a balance of $9,054 was purchased October 10, 2008 for $9,000; another CD with a balance of $12,073 was purchased October 24, 2008 for $12,000; and a CD with a balance of $15,044.44 was purchased November 3, 2008 for $15,000.

The Wachovia statement (Exhibit 12) does not show any withdrawals corresponding to the amount used to purchase the three CDs. Husband offered no Wachovia statement that showed those withdrawals and gave no explanation of his failure to do so. At oral argument, husband conceded there was no documentation supporting his testimony.

In its letter opinion, the trial court noted that husband offered no additional evidence of the source of the funds used to purchase the CDs and concluded husband failed to rebut the marital presumption. The trial court rejected husband's argument that the dairy business never generated sufficient funds to accumulate funds to purchase the CDs, and found that "the evidence does partially support the finding that money was available to accumulate some funds."

Clearly, the trial court gave no weight to husband's unsupported statement that the funds used to purchase the CDs came from his Wachovia account.[1]

Husband further argues there was no evidence when the CDs were purchased. However, Exhibit 15, the Carter bank statement, proves that all three CDs were purchased in October and November of 2008, during the marriage.[2]

## WAIVED ISSUES

### Assignment of Error Four

Appellant's assignment of error four states, essentially, that the trial court erred in finding that 29.5 acres and 9.986 acres of property that the parties purchased during the marriage were marital property. In his argument on brief, appellant never referred to these two parcels of property. He failed to make any argument whatsoever, or to cite to any authority in support of this contention. Husband conceded at oral argument that he never briefed that assignment of error.

Appellant has the burden of showing that reversible error was committed. Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Rule 5A:20(e) mandates that appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Based on this rule, this Court has repeatedly stated that unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Furthermore this Court "will not search the record for errors in order to interpret the appellant's

---

[1] While wife argued husband never testified that the CDs were his separate property, it is clear from his testimony that he considered them as such.

[2] While the exhibit indicates that CDs were acquired after the final separation, neither party argues that the marital presumption does not apply pursuant to Dietz v. Dietz, 17 Va. App. 203, 436 S.E.2d 463 (1993), and we will not raise the issue *sua sponte*. Both parties argue only whether the marital presumption was rebutted.

contention and correct deficiencies in a brief." Id. Nor is it this Court's "function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*).

Despite that appellee raised the waiver in her brief, appellant simply ignored the issue in his reply brief. We find that husband's failure to develop any argument or cite to any authority is significant, so we will not consider this assignment of error on appeal. See Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention.").

### Assignment of Error Three - Farm Bureau IRA

At oral argument, appellant conceded that his opening brief contained no argument or legal authority supporting his assignment of error regarding the Farm Bureau IRA. Appellant did address this issue for the first time in his reply brief, but again cited to no authority in support of his position.

As previously stated, Rule 5A:20(e) mandates that appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." We find that husband's failure to develop any argument or cite to any authority on opening brief is significant, so we will not consider this assignment of error on appeal. Fadness, 52 Va. App. at 851, 667 S.E.2d at 866.

### CROSS ASSIGNMENT OF ERROR

By cross assignment of error, wife contends the trial court erred in classifying the Wachovia account and the Lincoln Financial account as husband's separate property. She argues that these accounts were acquired during the marriage and husband failed to rebut the marital property presumption.

"Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney, 45 Va. App. at 31-32, 608 S.E.2d at 492.

We recognize that under our standard of review we view the evidence in the light most favorable to the prevailing party, here husband, as to the classification of these two accounts. White v. White, 56 Va. App. 214, 216, 692 S.E.2d 289, 290 (2010).

The trial court, in its opinion letter, ruled that the Wachovia and Lincoln accounts were inherited from husband's parents and were separate property. The court noted that both parents died during the marriage. The trial court did not address whether the presumption of marital property applied or whether husband successfully rebutted the presumption. However, Code § 20-107.3(A)(1) defines separate property, *inter alia*, as "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party." Code § 20-107.3(A)(2) defines marital property *inter alia*, as "all other property acquired by each party during the marriage which is not separate property as defined [in § 20-107.3(A)(1)]." Thus, the presumption only applies to marital property, not separate property acquired during the marriage by inheritance.[3]

Our inquiry, then, is whether credible evidence establishes that these two accounts were inherited by husband from his mother. The trial court so found, and we find sufficient evidence in the record to support that factual finding.

While there was a conflict in the evidence, husband testified he inherited the Wachovia account from his mother. It is apparent, however, that the trial judge resolved the conflict in the evidence in husband's favor. The credibility of witnesses and the weight to be accorded their

---

[3] We note that the trial court in its opinion letter correctly did not address whether the marital presumption was rebutted.

testimony is a matter within the sole province of the finder of fact. See Servis v. Commonwealth, 6 Va. App. 507, 525, 371 S.E.2d 156, 165 (1988). Husband later moved some of the Wachovia assets to another account which later became Lincoln. The Wachovia account was the source of the Lincoln account.

We conclude that, based on the trial court's factual findings, the trial court did not err in concluding that the Wachovia and Lincoln accounts were separate property.

ATTORNEY'S FEES ON APPEAL

Wife asks for an award of attorney's fees and costs to pursue this appeal.[4]

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

After considering the record in this case, we grant wife's request for appellate fees. We view all of husband's assignments of error as without merit. On the issues he argued, he challenged findings of the trial court that are clearly supported by the evidence. On other issues, husband failed to brief them altogether. We have no reluctance imposing fees in such circumstances. Fox v. Fox, 61 Va. App. 185, 208, 734 S.E.2d 662, 673 (2012). Such award shall not include fees and costs incurred as a result of wife's cross assignment of error.

We remand this case to the trial court to award wife attorney's fees associated with her defense of all of husband's arguments and for fees and costs associated with the remand.

Affirmed and remanded.

---

[4] Since this matter did not arise from the juvenile and domestic relations district court, Code § 16.1-278 does not govern the award of attorney's fees. See Lynchburg Division of Social Services v. Cook, 276 Va. 465, 484, 666 S.E.2d 361, 371 (2008).