## P. A. Agelasto, Jr., et al., Etc.

## v.

## Frank Atkinson Real Estate, et al.

Record No. 820400

Decided March 8, 1985, at Richmond

Present: All the Justices

*G. Michael Price (Jett, Agelasto, Berkley, Furr & Price*, on briefs), for appellants.

*Edward T. Caton (Barry Randolph Koch; Caton & Koch, P.C.*, on brief), for appellee, Barbara Geitz.

No briefs or arguments for appellees, Frank Atkinson Real Estate, John Capps, Co-Guardian of the estate of Helen Capps Sparrow, or John T. Capps.

CARRICO, C.J., delivered the opinion of the Court.

In the trial court, Frank Atkinson Real Estate (Atkinson) filed an amended motion for judgment against P. A. Agelasto, Jr., and Justine U. Capps, executors of the estate of Hoyt W. Capps, deceased (the Capps estate), and Barbara Marden Gietz and John Capps, guardians of the estate of Helen Capps Sparrow (the Sparrow guardianship). The motion alleged that either the Capps estate or the Sparrow guardianship was indebted to Atkinson in the sum of $5,000, plus attorney's fees, interest, and costs, for a real estate commission due pursuant to a contract of sale signed

by Hoyt W. Capps as attorney-in-fact under a power of attorney executed by Helen Capps Sparrow, the seller.

The competence of Mrs. Sparrow to execute the power of attorney was the central issue in the trial below. The jury trying the case was instructed that if Mrs. Sparrow was competent at the time she executed the power of attorney, then the Sparrow guardianship would be liable for the real estate commission, but that if she was not competent at the time and Hoyt Capps knew or had reason to know she was incompetent, then the Capps estate would be liable for the commission.

The jury returned a verdict exonerating the Sparrow guardianship but finding in favor of Atkinson against the Capps estate in the sum of $5,000, plus interest and costs and attorney's fees of $1,000. The trial court entered judgment on the verdict, and we granted the Capps estate an appeal against both Atkinson and the Sparrow guardianship.

The power of attorney in question was executed by Mrs. Sparrow on June 11, 1979, designating Hoyt W. Capps, a relative, as her attorney-in-fact. A listing agreement authorizing Atkinson to sell the property in dispute was signed by both Mrs. Sparrow and Hoyt Capps on July 28, 1979. The sales contract upon which Atkinson claims a commission was signed by Hoyt Capps on behalf of Mrs. Sparrow under date of August 1, 1979. The contract named Phil S. Hamovit as purchaser and contained a clause providing for a ten percent brokerage fee and stating that "[i]f either Buyer or Seller defaults . . . such defaulting party shall be liable for the . . . brokerage fee . . . and for any expenses, including reasonable attorney's fees, incurred . . . in connection with . . . the enforcement of this agreement."

Before the sale could be consumated, Barbara Gietz, a niece of Mrs. Sparrow's deceased husband, filed a petition in the Circuit Court of the City of Virginia Beach seeking to have Mrs. Sparrow declared incompetent. By order entered October 29, 1979, Mrs. Sparrow was adjudged "mentally incapable of properly handling and managing her estate," and Barbara Gietz and Hoyt Capps were named co-guardians of her estate. Some time later, Hoyt Capps died, and his son, John Capps, was substituted in his place as co-guardian.

Barbara Gietz, with John Capps' concurrence, refused to proceed with the sale to Hamovit. Atkinson then instituted this action for the real estate commission allegedly due on the sale.

As indicated previously, the jury was instructed that the Capps estate would be liable for Atkinson's commission if Mrs. Sparrow was not competent at the time she executed the power of attorney and Hoyt Capps knew or had reason to know she was incompetent. On appeal, the Capps estate contends the evidence was insufficient to support the jury's finding that Mrs. Sparrow was incompetent when she signed the power of attorney. The estate also contends the trial court erred in admitting evidence that Hoyt Capps personally paid a commission to a different realtor for the sale to a different purchaser of different Sparrow property.

The evidence concerning Mrs. Sparrow's competence was in sharp conflict. Supporting the position of the Capps estate that Mrs. Sparrow was competent to execute the power of attorney, Dr. R. J. Robertson, Jr., testified he had examined Mrs. Sparrow shortly before the power of attorney was executed. The doctor said that he believed Mrs. Sparrow was capable of understanding the nature of a power of attorney at the time he made a written report on April 30, 1979. He stated further that with the condition from which Mrs. Sparrow suffered, "there are periods when the person may be more lucid or less lucid," and he opined that Mrs. Sparrow was "capable of a lucid interval on June 11, 1979," the date she signed the power of attorney.

Elizabeth Atkinson, who secured Mrs. Sparrow's signature to the July 28, 1979 listing agreement, testified that the agreement was explained to Mrs. Sparrow and that "she seemed to understand" the document. The two lawyers and the secretary who participated in the preparation of the power of attorney and who were present when Mrs. Sparrow signed it, testified that she understood the nature of the document and the consequences of its execution. A fourth witness who observed the signing testified that Mrs. Sparrow expressed the wish for Hoyt Capps to "take care of things for her" and that she understood the power of attorney would accomplish this purpose.

Other evidence, however, supported the position of the Sparrow guardianship that Mrs. Sparrow was not competent to execute the power of attorney. Dr. Robertson testified he had stated in his written report of April 30, 1979, that Mrs. Sparrow was "not capable of managing [her] affairs and . . . the appointment of a guardian would be in [her] best interest." Barbara Gietz and several other witnesses, including a senior social worker in adult services for the Virginia Beach Department of Social Services, testi-

fied to the deplorable conditions under which Mrs. Sparrow lived, despite the fact she was a woman of means. These witnesses also detailed the confused state of mind and bizarre behavior Mrs. Sparrow exhibited over a period beginning prior to the time the power of attorney was executed and continuing until she was declared incompetent in October, 1979.

Finally, Dr. B. W. Phillips, a psychiatrist, testified he examined Mrs. Sparrow on October 14, 1979, and determined that she was suffering from "an organic brain syndrome, chronic, probably secondary to cerebral arteriosclerosis" and that "her mental function [was] very impaired." Dr. Phillips said it was his opinion that Mrs. Sparrow was "mentally incompetent at the time of [his] examination as well as incompetence being present by March 1979," and that she was not competent to execute a power of attorney on June 11, 1979.[1]

We believe it was for the jury to resolve the conflicts in the evidence concerning Mrs. Sparrow's competence at the time the power of attorney was executed and to decide whether she was competent or not. With the conflicts resolved against competence, the evidence was sufficient to support the jury's finding of incompetence.

We believe further, however, that the jury's verdict imposing liability upon the Capps estate is tainted by reversible error. This error results from the admission of evidence concerning compromise and settlement.[2]

The trial court permitted the Sparrow guardianship to show that Hoyt Capps, during his lifetime, had personally paid a real estate commission on another sale of land he made under the power of attorney. The trial court also permitted the guardianship to introduce into evidence a contract executed by Hoyt Capps as

---

[1] The Capps estate argues that Dr. Phillips' testimony concerning Mrs. Sparrow's incompetence on June 11, 1979, was inherently incredible and should have been rejected by the trial court because it was based upon an examination made four months after the power of attorney was executed; however, no objection to the testimony was voiced in the trial below. In any event, the purported inadequacy in the basis for the testimony affected its weight only, and not its admissibility.

[2] The Sparrow guardianship contends that error was not properly preserved to the evidence concerning compromise and settlement. This contention, however, is wholly without merit. Counsel for the Capps estate objected as soon as the subject of compromise was first mentioned, and the trial court held a sidebar conference, which was not reported. Later, with the permission of the trial court, counsel stated the grounds of his objection for the record.

attorney-in-fact for Mrs. Sparrow agreeing to sell Uschi Mednick a lot adjacent to the property involved in the present litigation. Dated August 14, 1979, the contract provided for the payment of a commission in terms identical with those in the present case, but involving a different realtor.

The Sparrow guardianship acknowledges the general rule that evidence of compromise and settlement is inadmissible. They rely, however, upon an exception to the general rule recognized in *Richmond* v. *Ewing's Sons*, 201 Va. 862, 114 S.E.2d 608 (1960).

That case involved an agreement between the City of Richmond and a contractor for the construction of a juvenile detention home. The project was delayed as a result of litigation filed by opponents of the project. Although the city ultimately prevailed in the litigation, it decided to abandon the project. The city attorney wrote the contractor asking for a statement of the damages or compensation the contractor expected to claim against the city. In the letter, the city attorney stated it was *"recognized that the City has a binding contract with A. H. Ewing's Sons, Incorporated, for this construction."* *Id.* at 866, 114 S.E.2d at 611 (emphasis in original). The trial court admitted the letter into evidence.

The city contended on appeal that the statement in the letter was inadmissible because it was part of an offer to compromise the contractor's claim. Saying this contention was without merit, we held that the statement was admissible because it constituted "an *express admission* of liability made during negotiations for a compromise." *Id.* at 870, 114 S.E.2d at 613 (emphasis added).

The Sparrow guardianship argues that Hoyt Capps' personal payment of the commission on the other sale constitued an express admission that he was liable not only for the commission involved there but also for the commission involved here. We disagree. The most one can draw from Hoyt Capps' payment of the other commission is an inference that he considered himself personally liable therefor. Such an inference does not rise to the dignity of an express admission of liability.

The Sparrow guardianship also seeks to avoid the impact of the general rule by arguing that the challenged evidence did not involve "any offer to compromise or settle the case at hand." Instead, the guardianship says, the evidence related to an entirely separate contract, an entirely separate purchaser, and an entirely separate agent who sold another piece of real estate under an entirely different set of facts.

This argument, however, merely points up the irrelevance of the disputed evidence. And this case demonstrates the wisdom of applying the general rule whether the evidence concerning compromise and settlement relates to the claim on trial or to another claim involving a third party. *See Lewis* v. *Dixie-Portland Flour Mills, Inc.*, 356 F.2d 54, 57 (6th Cir. 1966); *Woodland* v. *Cote*, 252 A.D. 254, 255-56, 299 N.Y.S. 742, 743-44 (1937); *Dixie Lines* v. *Grannick*, 238 N.C. 552, 555-56, 78 S.E.2d 410, 413 (1953).

■ Finally, the Sparrow guardianship argues that any error in admitting the evidence concerning Hoyt Capps' payment of the other commission was harmless, if error at all. But the question of liability as between the Capps estate and the Sparrow guardianship was close, and the improper evidence may have tipped the scales against the Capps estate. We cannot say, therefore, that the error was harmless.

Accordingly, we will reverse the judgment appealed from and remand the case for a new trial on all issues, but with the evidence concerning Hoyt Capps' payment of other commissions excluded.

*Reversed and remanded.*