## CIRCUIT COURT OF THE CITY OF RICHMOND

Virginia Business Exchange, Inc.

v.

Thomas A. Mathews

February 21, 1996

Case No. LA-2389-4

BY JUDGE RANDALL G. JOHNSON

Plaintiff, Virginia Business Exchange, Inc., described in its motion for judgment as "a broker [which] acts as an exclusive selling agent for potential sellers and earns commissions from the sale of businesses," seeks in this action to recover a $60,000 commission which it claims defendant owes it as the procuring agent for the sale of defendant's business. The case was tried to the court, sitting without a jury, on February 9, 1996, and was taken under advisement.

The business in question, and which was owned by defendant, was a sports complex in Hanover County known as the Richmond Sports Park. On October 11, 1994, plaintiff and defendant entered into a written "Exclusive Authorization to Sell" which gave plaintiff exclusive selling rights to the business for 120 days at a commission of 6 percent. The agreement also provided for payment of the 6 percent commission if, within 180 days of the expiration of the agreement, defendant sold the business "to any person with whom [plaintiff] has negotiated as a prospective purchaser." One hundred twenty days from October 11, 1994, is February 8, 1995. One hundred eighty days from February 8, 1995, is August 7, 1995. By letter dated February 3, 1995, defendant told plaintiff "I will not be interested in renewing our contract past the expiration date." On August 25, 1995, defendant sold the business to Family Golf Centers, Inc., for just over $1,000,000, 6 percent of which is $60,000, the amount claimed by plaintiff.

Plaintiff first argues that it is entitled to a commission because the written exclusive authorization was extended by verbal agreement between plaintiff's president, William Power, and defendant. Second, plaintiff argues that even if the parties' written agreement was not extended, plaintiff was still the "procuring cause" of the sale and thus, under Virginia law, is entitled to reasonable compensation. The court rejects both arguments and will enter judgment for defendant.

With respect to plaintiff's argument that the written exclusive authorization was extended, it is simply plaintiff's president's word against defendant's word, defendant having specifically denied in his testimony that any extension occurred. Since plaintiff has the burden of proof on this issue, this "stalemate" in the testimony will be resolved in favor of defendant. Moreover, in light of defendant's clear, unequivocal, and written pronouncement to plaintiff that he was not interested in renewing the exclusive authorization, plaintiff's argument that it subsequently relied upon a verbal agreement to extend the authorization lacks credibility. After all, it is plaintiff which is in the business of brokering the selling of businesses and which relies on commissions to stay in business. It should have done a better job of protecting its interests here.

With regard to whether plaintiff was the procuring cause of the sale, plaintiff relies on well-settled Virginia law that even in the absence of an express contract, where a broker "perform[s] services which [are] the procuring cause of the sale and under such circumstances as to give the owner reason to believe they [are] performed with the expectation of compensation," the broker may recover a reasonable commission under the doctrine of implied contract. *Korzendorfer Realty v. Hawkes*, 211 Va. 534, 537-38, 178 S.E.2d 524 (1971); *Ford v. Gibson*, 191 Va. 96, 59 S.E.2d 867 (1950). Whether circumstances exist in any particular case which give rise to an implied contract is usually a question of fact to be determined by the jury or by the court sitting without a jury. *Wilson v. Schmidt & Wilson, Inc.*, 184 Va. 642, 646, 35 S.E.2d 737 (1945). The court finds that such circumstances do not exist here.

Plaintiff's president testified that in January, 1995, plaintiff entered into an agreement with a company named Forecast Golf Group, Inc., under which Forecast would "contact prospective buyers of [defendant's] business, provide preliminary screening, and forward pre-qualified buyer leads to plaintiff. In furtherance of that agreement, the cover of Forecast's May/June, 1995 newsletter, the *Golf Range Times*, was an aerial photograph of defendant's business with the caption: "Buying or Selling a Golf

Range?" Inside, there was an advertisement seeking buyers for the business. On May 11, Forecast sent to plaintiff a list of potential buyers, and on May 21, an updated list was sent. Among the names on the updated list was Ken Gurley, an agent for Family Golf Centers, Inc., the eventual buyer. Plaintiff's president testified that he forwarded Gurley's name to defendant. Defendant testified that he first heard of Gurley when Gurley called him directly. Again, because plaintiff has the burden of proof on this issue, and because there was no testimony from Gurley or anyone else about how he or Family Golf Centers, Inc., learned about defendant's business, the issue will be resolved in favor of defendant.

In order to be a procuring cause of a sale, a broker "must have originated or caused a series of events which, without break in their continuity, result in the accomplishment of the prime object of his employment, which is, usually, to procure a purchaser ready, willing, and able to buy on the owner's terms." *Ford v. Gibson, supra,* 191 Va. at 103. *See also Wilson v. Schmidt & Wilson, Inc., supra,* 184 Va. at 649. Thus, if Gurley's and Family Golf Center, Inc.'s introduction to defendant and his business resulted from plaintiff's efforts, either through Forecast's newsletter or otherwise, and if subsequent negotiations and the ultimate sale flowed naturally and uninterruptedly from that introduction, plaintiff would have a strong argument that it was truly the procuring cause of the sale and entitled to a reasonable commission. From the evidence presented, however, the court is unable to make such a finding.

As already noted, plaintiff's president did, in fact, testify that he gave Gurley's name to defendant. Defendant, however, testified that Gurley called him directly. Moreover, while the fact that Forecast sent Gurley's name to plaintiff after defendant's business was featured in its newsletter is evidence that Gurley learned of the business through Forecast — that is, that he saw the newsletter and contacted Forecast — that evidence is not conclusive. It is just as likely that Gurley heard about the business from a source other than Forecast, but contacted Forecast with the hope that Forecast would be able to get in touch with defendant, all with no knowledge by Gurley of the newsletter advertisement itself. In other words, all that is really known is that plaintiff contracted with Forecast, Forecast solicited buyers, Gurley's name appeared on a list provided by Forecast to the plaintiff, Gurley and defendant eventually talked with each other, and Gurley's principal bought the business. Because the burden was on plaintiff to fill in the gaps and to prove that its actions originated or caused the

events which, "without break in their continuity," resulted in the purchase of the business, judgment must be for defendant.

Finally, two letters from defendant to plaintiff's president which were introduced at trial, with no objection, contain offers to pay to plaintiff a commission less than the commission demanded by plaintiff. The court considers those letters to be offers of settlement of a disputed claim. They are not a factor in the court's decision. *See Agelasto v. Atkinson Real Estate*, 229 Va. 59, 64, 327 S.E.2d 84 (1985).