# CIRCUIT COURT OF THE CITY OF RICHMOND

Shalimar Development, Inc.

v.

Heritage Savings Bank

April 8, 1998

Case No. LS-3570-3

By Judge T. J. Markow

The parties appeared, by counsel, for a hearing on the Motion to Set Aside and/or Reduce the Jury's Verdict, which was a renewal of the defendant's Motion to Strike the Plaintiff's Evidence that was taken under advisement at trial on February 9, 1998.

> When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when it conclusively appears that the plaintiff has proved no cause of action against the defendant, or when it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it.

*Newton v. Veney & Raines*, 220 Va. 947, 951, 265 S.E.2d 707, 710 (1980) (citations omitted).

The court sustains this Motion to Strike the Plaintiff's Evidence based on two of the defendant's arguments: (1) the plaintiff did not prove the requisite "continuity" of events to support a recovery under a procuring cause theory; and (2) the plaintiff failed to present any evidence showing entitlement to a

commission from Heritage Savings from a sale of the Shalimar project by Heritage Federal.

While references are made herein to jury instructions, they are given only as statements of applicable law. As the Motion to Strike the Plaintiff's Evidence was taken under advisement, the court's analysis is from the perspective of the Motion to Strike and *not* from the viewpoint following the verdict.

Jury Instruction Number 1 posed the following questions:

> (1) Did Heritage Savings and Loan agree to pay Shalimar Development, Inc., a commission if plaintiff was the procuring cause of a contract for the sale of units in the Shalimar Condominiums or only when a written contract for sale was obtained by Shalimar?
>
> (2) Did Shalimar Development, Inc., perform its obligations under the contract?
>
> (3) If Shalimar Development is entitled to recover, what is the amount of its damages?

The determination of whether a broker is the procuring cause of a property sale is usually a question of fact. *Shea Realty Corp. v. Page*, 111 Va. 490, 493, 69 S.E. 327, 328 (1910). Jury Instruction Number 5 specified that the plaintiff must have "caus[ed] a series of events which, without break in their continuity, resulted in completing the sale."

> [A] real estate broker is the procuring cause of a sale when it has "originated or caused a series of events which, *without break in their continuity*, result in the accomplishment of the prime object of [its] employment, which is, usually, to procure a purchaser ready, willing and able to buy on the owner's terms."

*Edmonds v. Coldwell Banker Residential Real Estate Servs., Inc.*, 237 Va. 428, 432, 377 S.E.2d 442, 445 (1989)(quoting *Ford v. Gibson*, 191 Va. 96, 103, 59 S.E.2d 867, 870 (1950))(emphasis added); *see also Wilson v. Schmidt & Wilson, Inc.*, 184 Va. 642, 35 S.E.2d 737 (1945); *Virginia Business Exch., Inc. v. Mathews*, 38 Va. Cir. 370, 371 (Richmond 1995).

> If the broker has failed to produce a buyer within the time specified in his contract, or if the seller in good faith has terminated an agency indefinite in time, and the owner thereafter sells, the broker is not

entitled to commission upon the sale merely because the purchaser is one whom he introduced to the owner or to the property.

*Gibson*, 191 Va. at 104, 59 S.E.2d at 870.

The plaintiff and Heritage Savings entered into a "Exclusive Right to Sell Contract" in September 1989 to market the Shalimar Condominiums in North Myrtle Beach, South Carolina. The plaintiff agreed to employ its "best efforts to sell or to secure a contract for sale of the property" in exchange for a brokerage fee based on the gross sales price. The marketing agreement was terminated in July 1990. Heritage Savings was placed in receivership on October 19, 1990; the assets and liabilities of Shalimar Condominiums were assumed by a new entity, Heritage Federal (operating under the control of the Resolution Trust Corp.).

The parties do not contest that the plaintiff's marketing efforts were the "procuring cause" of the purchase of two condominium units by Mr. and Mrs. J. Woodley Wallace, Sr., in May 1990. The plaintiff is entitled to its $8,800 commission (plus interest) on these sales. It is also uncontested that the plaintiff's agent (Charles J. McCotter[1]) subsequently engaged in preliminary conversations with the Wallaces regarding the purchase of the *entire* condominium development. Even though McCotter discussed the sale with Heritage Savings officials and the Wallaces' accountant, negotiations on the purchase price reached an impasse. McCotter sought approximately $2 million whereas the Wallaces sought to buy the property for $1 million. At this point, the series of events which began with the original sale of two units by the plaintiff to the Wallaces was halted. Further, the plaintiff's agency agreement was terminated by Heritage Savings in July 1990. Heritage Savings was placed in receivership three months later.

Negotiations between the successor entity, Heritage Federal, and the Wallaces began anew and culminated in a sales agreement for approximately $1 million in April 1991, eight months after McCotter's role was terminated and six months after the start of the receivership.

Although the jury was correct in finding that Shalimar Development, Inc., was entitled to a commission when it procured a contract for sale of the units, the court finds the evidence insufficient to establish that Shalimar was the actual "procuring cause" of the April 1991 transaction. Due to the pricing impasse, the termination of the plaintiff's marketing contract, and the receivership, it was erroneous to submit the issue to the jury as reasonable

---

[1] Shalimar Development , Inc., is now defunct. Mr. McCotter is the successor in interest to this entity.

people could not find this series of events to be continuous. The facts of the plaintiff's original brokerage role and introduction of the Wallaces to the property are insufficient to sustain its entitlement to a commission in light of the break in the continuous series of events leading up to the sale.

If Shalimar Development, Inc., was not the procuring cause of the property sale, then its commission could not have been "due and payable" at the time that the RTC was appointed the receiver for Heritage Savings. The RTC was charged with paying the "valid obligations" of Heritage Savings under 12 U.S.C. § 1821(d)(2)(H). Contract claims are limited to "actual direct compensatory damages" determined *"as of the date of the appointment of the ... receiver."* 12 U.S.C. § 1821(e)(3) (emphasis added). The plaintiff is seeking a commission stemming from the sale of the project on May 15, 1991. The Motion for Judgment was filed on October 11, 1990. Heritage Savings was placed in receivership on October 19, 1990. Considering this timing disparity, compensatory damages had accrued neither as of the date that the plaintiff instituted this cause nor as of the date that Heritage Federal assumed its responsibility for the Shalimar condominiums. *See Lawson v. Fleet Bank,* 807 F. Supp. 136, 143 (D. Me. 1992) (under receivership law, a claim against the failed bank is measured as of the time that insolvency is declared); *Citibank (South Dakota), N.A. v. F.D.I.C.,* 827 F. Supp. 789, 791 (D. D.C. 1993) ("[a] recoverable claim must represent an amount due and owing at the time of declaration of insolvency"); *Kennedy v. Boston-Continental Nat'l Bank,* 84 F.2d 592, 597 (1st Cir. 1936) ("[i]f nothing is due at the time of insolvency, the claim should not be allowed"). Although there was a potential for contractual liability under a procuring cause theory pursuant to the prior marketing agreement, the absence of a procuring cause and the discontinuity of the final sale forecloses any actual direct compensatory damages as of the insolvency date.

The defendant's Motion to Strike the Plaintiff's evidence is therefore sustained. The plaintiff is entitled to judgment against the defendant for $8,800 only.

It is therefore ordered that the plaintiff Shalimar Development, Inc., shall have judgment against the defendant, Heritage Savings Bank, for $8,800 plus interest at 5% per annum from May 14, 1991, until paid and the plaintiff shall be awarded its costs.