COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Beales
Argued at Chesapeake, Virginia


CLIFTON O. BALLARD, III

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2791-05-1                      JUDGE RANDOLPH A. BEALES
                                                         SEPTEMBER 12, 2006
BETHEL B. BALLARD


             FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                         Christopher W. Hutton, Judge

        Charles E. Haden (John Wesley Ward, Jr., on brief), for appellant.

        John F. Rixey for appellee.


        Clifton O. Ballard, III (husband) appeals the October 19, 2005 final decree awarding

Bethel B. Ballard (wife) a divorce *a vinculo matrimonii*.  On appeal, husband contends the trial

court erred by 1) "considering negotiations between the parties . . . in awarding [wife] . . . the

equity in the" marital residence, 2) awarding wife all the equity in the marital home "based upon

[husband's] election to finally end the marriage," and 3) using "the finding that [husband] was at

fault in the break-up of the marriage to punish [him] economically and to justify an otherwise

arbitrary award of" the marital residence.  The second and the third claims are effectively the

same argument and will be considered together.  For the reasons that follow, we affirm in part,

reverse in part, and remand to the trial court for further proceedings.

                                  I.  STANDARD OF REVIEW

        We view the evidence, and all reasonable inferences flowing from it, in a light most

favorable to wife as the party prevailing below.  See Congdon v. Congdon, 40 Va. App. 255,

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

258, 578 S.E.2d 833, 835 (2003). "That principle requires us to 'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).

## II. FACTS

The parties married on May 20, 1995. Wife was 47 years old at the time of the marriage, and husband was 22 years old. Less than ten years later, on July 16, 2004, husband announced he intended to end the marriage and left the marital residence. Husband's evidence was that wife vigorously objected to husband spending virtually any time with his family or with his friends or colleagues from work; that wife and husband's mother did not get along; and that wife only wanted husband to spend time with wife and wife's adult children. The parties have lived separate and apart since July 16, 2004.

Both parties worked during most of the marriage. At the time of the parties' separation, husband was earning approximately $53,000 annually, and wife was earning approximately $35,000 annually. The parties had no children. At trial husband estimated that he contributed approximately sixty percent of the financial needs of the household throughout the marriage while wife contributed the remainder.[1]

Husband and wife each filed separate bills of complaint in which they originally sought divorce on fault-based grounds. Prior to trial, however, each elected to seek the divorce solely on the grounds of a year's separation. The trial court awarded wife a divorce on the basis of the separation.

During the proceedings, the trial court admitted, over husband's objection, wife's testimony that husband said she "could have the house." Specifically, she testified that they

---

[1] When the parties first met, husband was an employee of wife.

agreed wife "was to refinance the first mortgage" of approximately $93,000 and keep the house. Husband would "refinance the second mortgage" of approximately $23,000, which the parties used in part to purchase husband's Suburban. The parties purchased the vehicle for approximately $25,000. The parties never entered into a written agreement regarding these discussions.

After wife made arrangements to refinance the first mortgage and have the house deeded solely in her name, husband refused to sign the deed and relinquish his interest in the property until wife signed a property settlement agreement. Wife refused to sign the agreement, so the first mortgage was not refinanced by the time of the trial. Husband continued to pay the first mortgage while wife paid the second mortgage, for some period of time after the separation. Husband refinanced the second mortgage solely into his name to remove it as a lien on the marital home.

The record reveals that the residence was appraised at the time of trial at $239,500. The record also reveals that the equity in the marital home was then approximately $146,194. The residence constituted the parties' primary marital asset. The marital estate also included two retirement accounts, one in wife's name (worth approximately $13,000) and one in husband's name (worth approximately $7,000), the Suburban, and a 1999 Nissan Maxima that was not encumbered.

The parties agreed at trial that husband would keep his retirement account and the Suburban and that he had previously paid off the second mortgage; they agreed that wife would keep her retirement account and the Maxima. However, they did not agree that this division of the property was an equitable distribution of the assets. Husband specifically asked the trial court to take into account these values when apportioning the equity in the home and the marital debt.

In an opinion letter, the trial court awarded wife exclusive possession of the marital residence, her retirement account, the Maxima, and sole responsibility for payment of the first mortgage. Husband kept his retirement account, the Suburban, and the obligation to pay the loan taken out by him to pay off the second mortgage. The court ordered wife to pay husband $17,272.80 for his payments on the first mortgage during the parties' separation, in addition to any further amounts paid while awaiting the refinancing of the home by wife. The court explained that this award of the marital home to the wife "largely result[ed] from [husband's] unilateral decision to depart the marital home and dissolve the marriage and is pursuant to Code § 20-107.3E(5)."

Wife requested that husband pay eighteen months of health insurance premiums in lieu of spousal support. The court ordered husband to "guarantee continuing medical coverage to the wife" for a maximum of twelve months while wife looked for alternative coverage.

Husband then asked the court to reconsider its award of equitable distribution. The trial court declined, noting that it considered all the factors under Code § 20-107.3(E), although stating that it gave greater weight to husband's decision to leave the marriage and the marital home. The court explained:

> The issue comes down largely to the question of economic impact, and the situation is uncontradicted that [husband] chose to end this marriage . . . . [I]t's clear that he wanted to end the marriage and he left, left his wife and left the house. . . . [Wife] wanted the house. She at least in the beginning wanted to remain married. *And I believe there's an economic impact there very clearly because there's no way that she could keep the house and pay his equity*, were I to determine that he was deserving of same, . . . *and then pay the mortgage.* So I think there's a very clear economic impact to [husband's] unilateral decision in leaving the marriage which is consistent with cases that counsel have cited and the factors in equitable distribution.

(Emphasis added.)

- 4 -

III. ANALYSIS

A. Evidence of Negotiations

Husband asserts the trial court "improperly consider[ed] negotiations between the parties and offers of compromise in awarding" wife the marital residence. We disagree.

The general rule is that evidence of compromise and settlement is inadmissible. See Agelasto v. Frank Atkinson Real Estate, 229 Va. 59, 64, 327 S.E.2d 84, 86 (1985). However, in some circumstances, the trial court generally may inquire into settlement negotiations. Hurt v. Newcomb, 242 Va. 36, 40, 405 S.E.2d 843, 844 (1991). Assuming without deciding that the evidence of which husband complains is indeed "evidence of compromise and settlement," the record reveals that the court did not consider this information in its award.

Over husband's objection, wife testified that he offered to give her the house after announcing his intention to end the marriage. Husband asserts on appeal that "the trial court plainly did consider evidence of negotiation and offers in compromise . . . and apparently gave weight to the alleged representations as a binding commitment . . . ." However, the court explained, "[A]ll of that negotiation, potential compromise, is irrelevant to what I have to decide." Thereafter, while noting the conflict in the testimony, the court stated:

> [I]t's my responsibility to give certain weight to that testimony.
> And I think [husband] probably did say that initially. Whether or
> not that was a well-considered statement or whether he really
> thought that out, I don't know. But in the heat of the moment, that
> is the kind of thing that is often said.

The record does not support husband's contention that the trial court based its award on husband's representations to wife regarding the marital residence or on evidence of negotiations and compromise between the parties. Any error in admitting evidence of negotiation and compromise was therefore harmless and does not justify overturning the court's award. See Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005) ("[An] error does not

require reversal if we determine the error was harmless."); Ranney v. Ranney, 45 Va. App. 17, 33-34, 608 S.E.2d 485, 492-93 (2005) (explaining that when error does not have an impact on the court's award, the error is harmless and does not justify reversal).

## B. Equitable Distribution

Husband complains that the trial court improperly awarded wife all of the equity in the marital residence based upon his "unilateral decision to depart the marital home and dissolve the marriage." We agree.

In our review, we are guided by the principle that:

> [u]nless it appears from the record that the [trial judge] has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the [trial judge's] equitable distribution award will not be reversed on appeal.

Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987); see also Gray v. Gray, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985). Moreover, and although "[t]he Virginia General Assembly has not adopted a statutory presumption of equal distribution," we recognize that a trial court must base the division of a marital estate on reasoned examination of the evidence within the statutory framework. Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830 (1986). This framework, Code § 20-107.3, "is predicated upon the philosophy that marriage represents an economic partnership requiring that upon dissolution each partner should receive a fair proportion of the property accumulated during marriage." Roane v. Roane, 12 Va. App. 989, 994, 407 S.E.2d 698, 701 (1991).

Here, the trial court granted wife a divorce on the ground of a year's separation and then considered the reasons for the dissolution of the marriage in determining an equitable distribution award. Although husband suggests otherwise, when a divorce is granted on no-fault grounds, Code § 20-107.3(E)(5) does permit the trial court to consider "[t]he circumstances and

factors which contributed to the dissolution of the marriage, specifically, including any grounds for divorce under the provisions of subdivisions (1), (3) or (6) of § 20-91 or § 20-95." See Cousins v. Cousins, 5 Va. App. 156, 158-59, 360 S.E.2d 882, 884 (1987) (finding the trial court properly considered evidence of husband's adultery when making an award, even though the divorce was not awarded on those grounds). In this case, the court did not err by considering the reasons for the dissolution of the marriage, but instead erred in its reasoning for the award.

The trial court held that the husband's decision to leave resulted in a "very clear economic impact" on the marriage, stating, "there's no way that [wife] could keep the house and pay his equity . . . and then pay the mortgage." But, as we held in Lightburn v. Lightburn, 22 Va. App. 612, 620, 472 S.E.2d 281, 285 (1996), "no provisions within Code § 20-107.3 authorize or direct the trial judge to consider evidence of economic and emotional difficulties following the divorce." Instead, "[t]he legislature enacted Code § 20-107.3 to divide the value of marital property between spouses based upon each spouse's contribution to the acquisition, preservation, or improvement of property obtained during the marriage." Id. at 619, 472 S.E.2d at 284. In short, a situation created by the economic realities of a divorce is not the type of fault or economic impact intended by Code § 20-107.3(E)(5).

Here, the trial court explicitly relied upon Code § 20-107.3(E)(5) as the most important factor in fashioning the award, finding that husband's decision to leave resulted in a "very clear economic impact" on the marriage, stating, "[T]here's no way that [wife] could keep the house and pay his equity." The court never found that husband's actions affected the value of the home itself. Wife, in fact, conceded at oral argument that husband's actions did not adversely affect the value of the home. The only economic impact found by the court was wife's inability to afford a mortgage that would include payment to husband of his equitable share in the house.

In Lightburn, the parties were married for one year and lived together for even less time. During the marriage, Mr. Lightburn conveyed by deed of gift to himself and his new wife as tenants by the entirety approximately ten acres of his separate real estate in Madison County, so that Mrs. Lightburn would receive the property should he die first.  Id. at 615-17, 472 S.E.2d at 282-83.  The trial court awarded Mrs. Lightburn half the value of the real estate, explaining that "'the short duration of this marriage only exacerbated wife's problems connected with uprooting from Blacksburg [where she lived before the marriage] and then having to try to re-root there following this failed marriage.'"  Id. at 615, 472 S.E.2d at 282 (quoting the trial court).

This Court found that the trial court had erred, noting that Code § 20-107.3 does not allow a court:

> to consider evidence of economic and emotional difficulties following the divorce.  As noted, equitable distribution and monetary awards stemming therefrom are intended to divide the marital property fairly between the parties based upon their rights and equities due to their monetary and nonmonetary contributions to the acquisition, maintenance, preservation or improvement of the property.  Hardships of one party from the divorce do not necessarily play a role in this division.

Id. at 620, 472 S.E.2d at 285 (discussing O'Loughlin v. O'Loughlin, 20 Va. App. 522, 458 S.E.2d 323 (1995); Aster v. Gross, 7 Va. App. 1, 371 S.E.2d 833 (1988)).  As the Court also noted:

> the relationship that [wife's] hardship bore to the acquisition, care, and maintenance of the property has not been established. Certainly, the consequence of the hardship when weighed against the four months the wife was present in the house and the husband's acquisition of the property does not support an equal division.
>
> The order for equitable distribution appears to have been grounded upon factors better suited to the consideration of spousal support . . . .

Id.  This Court reversed and remanded for reconsideration.

The trial court's explanation of the award here is similar to the trial court's rationale in Lightburn. The trial court in Lightburn impermissibly based its decision on Mrs. Lightburn's financial troubles after the separation. Here, the court reasoned that wife could not afford the mortgage after the divorce if husband was awarded a portion of the equity in the home. Both the trial court in Lightburn and the trial court in this matter premised their decisions on circumstances that occurred after the separation that had no bearing on "the acquisition, preservation, or improvement of property obtained during the marriage." Id. at 619, 472 S.E.2d at 284. These types of circumstances are not included in the factors under Code § 20-107.3(E).

Wife's inability to afford the post-divorce mortgage payment, while perhaps a factor in determining spousal support, is not a valid reason to award such an overwhelming portion of the marital property to her. Consequently, we find the trial court abused its discretion by basing its division of the marital estate on a perceived economic hardship created by the divorce.

We, therefore, remand to the trial court to reconsider the division of the marital property, giving due weight to all of the relevant factors in Code § 20-107.3(E). We note that where this Court remands for reconsideration of an equitable distribution award, the trial court necessarily must determine what, if any, spousal support should be awarded. Robinson v. Robinson, 46 Va. App. 652, 671, 621 S.E.2d 147, 156-57 (2005) (*en banc*).

## IV. CONCLUSION

For the reasons stated above, we affirm as to the first question presented, but reverse and remand for reconsideration of the equitable distribution and spousal support awards.

Affirmed in part,
reversed in part,
and remanded.

- 9 -