**Richmond**

JUDY M. McDAVID

v.

FRANK E. McDAVID

No. 2158-93-2

and

FRANK E. McDAVID

v.

JUDY M. McDAVID

No. 2171-93-2

Decided December 13, 1994

COUNSEL

Donald K. Butler (W. Christopher Currie; Morano, Colan & Butler, on brief), for Judy M. McDavid.

Edward D. Barnes (Brian J. Grossman; Edward D. Barnes & Associates, P.C., on briefs), for Frank E. McDavid.

OPINION

**ELDER, J.**—Judy M. McDavid, wife, and Frank E. McDavid, husband, filed cross-appeals from the chancellor's equitable distribution award. Wife objects to the valuation and classification of property referred to as Arcadia Street and contests the overall percentage distribution of the award. Husband contests the trial court's valuation of the Ocean Creek property and FEMCO stock and its classification of the FEMCO stock and Tilghman Beach property as marital property.

We are guided by the principle that decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or

unsupported by the evidence. *Srinivasan v. Srinivasan*, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). For the reasons that follow, we affirm the chancellor's award.

The parties married in 1969 and had two children. Husband worked as a salesperson, and wife formed a corporation to provide secretarial services for husband, services which she was able to perform at home.

In 1977, the parties formed FEMCO to sell tennis equipment out of their home. Husband handled sales, and wife operated the administrative aspects of the business from home. They held the stock as tenants by the entireties with the right of survivorship.

In 1986, wife entered the real estate market as a salesperson. The parties then moved FEMCO to a commercial location, hired a manager and employees, phased out wife's responsibilities, and retitled all stock in husband's name. Wife testified that she agreed to retitle all stock in husband's name only because he claimed that he wanted to attract outside investors and that any subsequent transfer of stock would be easier if it was all in his name. Wife remained an active board member.

In 1989, the parties acquired property located at 235 Arcadia Street. The parties took title as tenants by the entireties because the wife was a real estate agent and they could avoid paying the real estate commission. The wife deeded her interest in the property to husband shortly after closing. Wife testified that she did so based on husband's representations that it was necessary to facilitate a marital trust he had established several years earlier.

Husband testified that FEMCO was placed in his name in order to make it easier to negotiate with investors and to protect wife from creditors of the company. After the Arcadia Street property was deeded to the husband, he leased it to FEMCO. By agreement between the husband and FEMCO, substantial improvements were later made to the Arcadia Street property. Those improvements and the debt service on the mortgage were paid from lease payments made by FEMCO to the husband.

Wife's appraiser testified that the fair market value of the Arcadia Street property was $175,000, which gave the parties $100,000 worth of equity in it. The cost of the appraisal was $1,000. The commissioner ultimately concluded that the property

at 235 Arcadia Street was husband's separate property under the terms of the deed of gift. He did not determine the value of the property, and he refused to allocate the cost of the appraisal between the parties. Wife excepted to these findings.

Husband testified that the market value of FEMCO was "probably . . . around $105,000," based on the value of inventory, accounts receivable, and fixed assets. On cross-examination, however, when asked whether his "value was $115,000 [sic] based on what Bobby Raymond told [him]," he responded, "Yes, because that's the only professional that I've ever heard [give] an opinion on it." Raymond apparently was an accountant whom husband had hired, through his attorney, for the purpose of valuing FEMCO. Raymond did not testify.

Wife presented the testimony of Robert Brydon, who had been the parties' accountant for over twenty years and had advised husband and his friend, Dave Martel, as to the relative value of McDavid's company, FEMCO, and Martel's company, DaMar, when the two were considering a merger. Brydon testified that although he did not "do a valuation" of FEMCO, he did determine its "net worth" or book value as of August 31, 1988. He testified that this method involved a tally of assets—including cash, accounts receivable and inventory—and did not account for depreciation of fixed assets. He later explained that the fixed assets, which originally had a value of $27,057, had been depreciated "on the books," apparently based on certain income tax code provisions. He also testified, however, that "the actual value of the fixed assets was $6,302. There [weren't] a lot of fixed assets." The building had not yet been built at that time. Based on that information, Brydon calculated husband's ninety-two percent share as having a value of $137,189. He admitted on cross-examination that his calculations did not include "the collection factor . . . on the accounts receivable."

The commissioner found the FEMCO stock to be marital property. He also expressly rejected husband's valuation of the FEMCO stock and found it to be worth $137,189. Husband excepted to these rulings.

The parties stipulated that the Ocean Creek property was marital property. Husband testified that he "would have to say" its market value was $39,000 but that "[he] wouldn't know." He also

testified that it was encumbered by a loan of $53,292.25. Wife testified that she thought the property had no value for equitable distribution purposes. The commissioner determined that the property had no value. Husband excepted to this finding.

The Tilghman Beach property was purchased in 1984 and titled in husband's name. At the time of the purchase, wife executed a document relinquishing her dower rights in the property as against the bank but did not sign a note or deed of trust. Wife testified that she subsequently wrote checks for payments on that property, but the commissioner found that all mortgage payments were made by husband. He ultimately concluded, however, that although wife "relinquished her interest in the property to the lender," the property was marital for purposes of equitable distribution. Husband excepted to this ruling.

The commissioner found that both parties made equal contributions to the well-being of the family, but that husband's contributions to the acquisition, care, and maintenance of the marital property were superior to wife's. He awarded husband fifty-two percent of the estate. Wife excepted to this distribution.

The circuit court adopted the commissioner's report and entered the final decree of divorce.

## I. *Classification*

The version of Code § 20-107.3 in effect at the time the divorce suit was filed in February, 1990, gave the court the authority to classify all property of the parties as either marital or separate. All property acquired by either party during the marriage is presumptively marital unless acquired "by bequest, devise, descent, survivorship or gift from a source other than the other party" or "in exchange for . . . the proceeds of sale of separate property, provided . . . [it was] maintained as [such]" during the marriage. Code § 20-107.3(A). How the property is titled generally is not dispositive of its classification. *See* Code § 20-107.3(B), (C).

Although property is initially classified as of the date of acquisition, once acquired, its character may change. *Wagner v. Wagner*, 4 Va. App. 397, 404, 358 S.E.2d 407, 410 (1987). Property which is initially separate may become marital property either by express agreement, *Westbrook v. Westbrook*, 5 Va. App. 446, 454, 364 S.E.2d 523, 528 (1988), or by the manner in which

it is maintained. *Id.*; *see Smoot v. Smoot*, 233 Va. 435, 441, 357 S.E.2d 728, 731 (1987). However, property which is marital may become separate only through "a valid, express agreement by the parties," *Wagner*, 4 Va. App. at 404, 358 S.E.2d at 410; Code § 20-155 (marital provision of the Premarital Agreement Act), or as provided in Code § 20-107.3(A)(3)(d). In this case, all disputed property was marital when acquired. The critical question in regard to each piece of property is whether the parties' subsequent actions resulted in its transmutation into husband's separate property. Husband bore the burden of proof on this issue. *Rexrode v. Rexrode*, 1 Va. App. 385, 392, 339 S.E.2d 544, 548 (1986).

## A.  *Arcadia Street Property*

Despite wife's contentions, we cannot conclude that the commissioner and chancellor erred in finding that the Arcadia Street property was husband's separate property. Although the property was marital when acquired by the parties as tenants by the entireties in 1989, husband and wife executed a deed of gift transferring the wife's interest to husband immediately after closing. That deed provided that the property was to be held by husband "in his own right as his separate and equitable estate as if he were an unmarried man . . . free from the control and marital rights of his present . . . spouse" and "with full and complete power . . . [to] dispose of the . . . property . . . during his lifetime . . . [or by] devise." Had this transaction occurred in the absence of a statute such as Code § 20-155,[1] the language at issue—which is in essence the language historically used to allow a married woman who was considered to be under a legal disability to retain power over her property as if she were a single woman or *femme sole*—would have been insufficient to rebut the presumption that property acquired during marriage with marital funds is marital property. *See Stroop v. Stroop*, 10 Va. App. 611, 614-15, 394 S.E.2d 861, 862-63 (1990). However, because the deed at issue here was executed in 1989, following the enactment of Code § 20-

---

[1]  Code § 20-155 is part of the Premarital Agreement Act and provides as follows: Married persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them, to the same extent, with the same effect, and subject to the same conditions, as provided in §§ 20-147 through 20-154 for agreements between prospective spouses, except that such marital agreements shall become effective immediately upon their execution.

155 in 1987, *see* Act of Mar. 9, 1987, ch. 41, 1987 Va. Acts 61, 61, we cannot conclude that the commissioner and chancellor erred in holding that the language of the deed that both parties signed "clearly and without ambiguity . . . grants title to [husband] as his separate property" as allowed by *Wagner* and Code § 20-155.

The evidence supports the chancellor's decision that after wife executed the deed of gift to husband conveying the Arcadia Street property to her husband as his separate property, the property was not later transmuted back to marital property. Husband's testimony indicates that the rental income he received from the corporation, FEMCO, for this property approximated the expenses incurred for maintenance, debt service, and improvements.

### B. *FEMCO Stock*

The evidence shows that the parties held title to the FEMCO stock as tenants by the entireties from 1978 until 1987. At that time, husband and wife executed an agreement transferring the stock to husband. In so doing, the parties merely placed their names and the number of shares in the blanks on the certificate of transfer so that it read as follows: "For value received, Frank E. McDavid [and] Judy M. McDavid hereby sell, assign and transfer unto Frank E. McDavid . . . one thousand (1,000) Shares represented by the within Certificate." The transfer certificate, dated March 10, 1987, was signed by both parties. It contained no language relating to the disposition of property upon separation or dissolution of the marriage. As found by the commissioner after hearing the parties' testimony, this transfer was conducted without compensation solely to make it easier for husband to sell stock in the company to outsiders. Although wife reduced her level of involvement in FEMCO's day-to-day operations, she continued to serve on the Management Operations Board until the parties' separation in 1989. Upon our review of the record, we cannot conclude that the commissioner erred in holding that the contents of the stock transfer agreement were insufficient to transmute the FEMCO stock from marital to separate property as allowed by *Wagner* and Code § 20-155.

### C. *Tilghman Beach Property*

In the case of the Tilghman Beach property, the only written document executed was wife's relinquishment of "her interest in

the property to the lender," not to husband. The use of this language in the deed of trust was insufficient to constitute the sort of valid, express agreement *between the parties* that is necessary to transmute marital property into separate property under *Wagner* or Code § 20-155. Accordingly, we cannot conclude that the commissioner erred in classifying the Tilghman Beach property as marital.

## II. *Valuation*

Code § 20-107.3 requires that "the court, upon request of either party, shall determine the legal title . . . [,] ownership and value of all property."

> Virginia's trial courts may, without doing violence to the statute, make a monetary award without giving consideration to the classification or valuation of every item of property, where the parties have been given a reasonable opportunity to provide the necessary evidence to prove classification or valuation but through their lack of diligence have failed to do so. However, a court may not arbitrarily refuse to classify or evaluate marital or separate property where sufficient evidence to do so is in the record. The court may not refuse or fail to give parties a reasonable opportunity to develop and present evidence of value. Nor can the court arbitrarily reject credible evidence of value merely because other evidence might be more accurate, convincing, desirable or persuasive.

*Bowers v. Bowers*, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987). It may, however, choose among conflicting assessments of value as long as its finding is supported by the evidence. *See Reid v. Reid*, 7 Va. App. 553, 563, 375 S.E.2d 533, 539 (1989), *rev'd on other grounds*, 245 Va. 409, 429 S.E.2d 208 (1993).

### A. *Arcadia Street Property*

Code § 20-107.3(A) states that the court "[s]hall determine the . . . value of all property." The Arcadia Street property was correctly classified as separate property. There was no showing that the value of this property was relevant or material to the equitable distribution determination. Under these circumstances, the failure to comply with the requirement of Code § 20-107.3(A) was harmless error.

## B. FEMCO Stock

Husband contends that the trial court erred in using evidence of book value of FEMCO, a close corporation, given that the record contained uncontradicted evidence of market value. Although he cites *Bosserman v. Bosserman*, 9 Va. App. 1, 384 S.E.2d 104 (1989), in support of this proposition, our review of *Bosserman* leads us to the opposite conclusion.

■ The close corporation to be valued in *Bosserman* was a real estate holding company whose sole asset was a piece of farmland with a stipulated fair market value of $147,600. *Id.* at 3, 384 S.E.2d at 107. The corporation's by-laws contained a restrictive transfer provision which specified valuation by book value, which the parties stipulated was $28,032. *Id.* at 3, 384 S.E.2d at 106. The trial court ultimately concluded that fair market value should be used. Because husband had offered no evidence of the fair market value of the stock, the court used the stipulated value of the corporation's sole asset, the farm. *Id.* at 4, 384 S.E.2d at 107. We upheld the trial court's ruling on appeal. In so doing, we noted that "valuation based upon the corporation's net assets has gained wide acceptance in cases *where the corporation is a real estate holding company* like Bosserman, Inc." *Id.* at 8, 384 S.E.2d at 109 (emphasis added). It also emphasized, however, that

> there are many methods available for valuing stock in a closely held corporation. . . . There is no uniform rule . . . . The valuation method must be tailored to meet the particular needs of each case. "Generally, greater weight will be given to earnings factors for those companies that sell products or services, and to asset values for investment or holding companies."

*Id.* at 8 & n.1, 384 S.E.2d at 109 & n.1 (quoting *Bowen v. Bowen*, 473 A.2d 73, 77 (N.J. 1984)); *see* Lawrence J. Golden, *Equitable Distribution of Property* § 7.07 (1983 & 1993 Supp.). Contrary to husband's assertions, we did not hold in *Bosserman* that book value is never an acceptable method for valuing a corporation. We merely held that the trial court was not required to use book value just because it was the method of valuation required by the buy-out provision in the corporation's by-laws.

Under these principles, we cannot conclude that the trial court erred in determining the value of the FEMCO stock based on testimony as to book value. As we noted in *Bosserman*, Bosserman, Inc., was a real estate holding company whose value was most accurately estimated by an examination of the fair market value of its sole asset. In this case, by contrast, because the corporation at issue was engaged in product sales, its value was more accurately determined by reference to "earnings factors." *See Bosserman*, 9 Va. App. at 8 n.1., 384 S.E.2d at 109 n.1 (quoting *Bowen*, 473 A.2d at 77).

The trial court could have concluded that Brydon's testimony as to book value accurately reflected these factors. Brydon provided extensive testimony as to the method he used to determine book value, which involved a tally of assets as listed in the books, including cash, accounts receivable and inventory.

Although he originally testified that his calculations did not reflect depreciation of the fixed assets, he later explained that the fixed assets, which had originally been valued at $27,057, had been depreciated "on the books," based on certain income tax code provisions, to a value of $6,032. Based on these figures, FEMCO's fixed assets accounted for only about four percent of the estimated value of the corporation as compared to one hundred percent in *Bosserman*.

Finally, although Brydon admitted on cross-examination that his calculations did not include "the [non-]collection factor . . . on accounts receivable," husband presented no evidence to show the extent to which this might affect the value of the company. In fact, husband testified that his estimate of fair market value also did not account for the non-collection factor. Accordingly, he is barred from contesting this issue on appeal. *See id.* at 9, 384 S.E.2d at 109-10. In sum, we cannot conclude that the trial court erred in accepting wife's evidence as to FEMCO's value over husband's, which was conclusory at best.

We also reject husband's assertions that Brydon's testimony was inadmissible both because it was irrelevant and because Brydon was unqualified to render an opinion as to value. We have held that book value is a relevant factor for consideration in valuing a close corporation. We also hold that the admission of Brydon's testimony was not error based on his purported lack of qualifica-

tions. Although Brydon claimed no knowledge of calculating the fair market value of corporations, the evidence showed that he had been a certified public accountant for over thirty years and had performed accounting work for the parties for twenty years. He also testified that he had been involved in the 1988 proposed merger between FEMCO and another corporation, DaMar, for which he examined the books of both corporations to determine their relative net worths. We cannot conclude that the commissioner abused his discretion in concluding that Brydon was qualified to testify on this subject or that Brydon's testimony was relevant to a determination of value. *See Aster v. Gross*, 7 Va. App. 1, 7, 371 S.E.2d 833, 837 (1988) (qualification); *Logan v. Fairfax County Dep't of Human Dev.*, 13 Va. App. 123, 132, 409 S.E.2d 460, 465 (1991) (relevancy).

### C. *Ocean Creek Property*

Although admitting that it is a question of first impression in Virginia, husband asserts on appeal that the commissioner and chancellor erred in refusing to assign a negative value to the Ocean Creek property. However, because the record contained sufficient evidence to support the commissioner's determination that the property had no value, we find it unnecessary to reach this issue. Husband testified that the property was encumbered with an outstanding mortgage of $53,292.25. He also testified that he "would have to say" its market value was $39,000 but that "[he] wouldn't know." Wife testified that the property had no value for equitable distribution purposes. The commissioner did not err in choosing wife's estimate as to value over husband's.

### III. *Allocation of Costs*

Wife contends that the commissioner and chancellor erred in not requiring husband to be responsible for a portion of the expense resulting from the appraisal of the Arcadia Street property. The obvious effect of the failure to allocate this cost to both parties is the implicit allocation of this expense to wife. We cannot conclude that requiring wife to satisfy this expense was an abuse of discretion.

### IV. *Fairness of Award as a Whole*

We reject wife's contention that the commissioner erred in granting her forty percent of husband's pension and forty-eight

percent of the remaining marital property. As wife concedes, Virginia law does not presume an equal division. *Pommerenke v. Pommerenke*, 7 Va. App. 241, 249-50, 372 S.E.2d 630, 634 (1988). Furthermore,

> [t]he chancellor is necessarily vested with broad discretion in the discharge of the duties the statute [Code § 20-107.3] imposes upon him. Unless it appears from the record that the chancellor has abused his discretion, that he had not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

*Brown v. Brown*, 5 Va. App. 238, 244-45, 361 S.E.2d 364, 368 (1987) (quoting *Smoot v. Smoot*, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987)). The commissioner's report makes clear that he considered all statutory factors, at least insofar as the parties presented evidence on them, and that he found that husband made larger monetary contributions to the marriage. After careful review of the record, we cannot conclude that the trial court erred in reaching this conclusion. We also hold that the award as a whole is reasonable and therefore constitutes no abuse of discretion. *See Blank v. Blank*, 10 Va. App. 1, 9, 389 S.E.2d 723, 727 (1990).

For these reasons, we affirm the equitable distribution award.

*Affirmed.*

Benton, J., and Willis, J., concurred.