COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Petty and McCullough
Argued at Alexandria, Virginia

UNPUBLISHED

BRIAN K. BRAKE

                                       MEMORANDUM OPINION[*] BY
v.      Record No. 1204-13-4        CHIEF JUDGE WALTER S. FELTON, JR.
                                             APRIL 1, 2014

KIMBERLY R. BRAKE

FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
Paul M. Peatross, Jr., Judge Designate

Andrew T. Richmond (William B. Allen, III; Poole Mahoney, P.C.;
Allen & Allen, P.C., on briefs), for appellant.

D. Eric Wiseley (David Silek; Struckman, White & Wiseley, PC;
Ours & Silek, PC, on brief), for appellee.

Brian K. Brake (husband) appeals the equitable distribution decision of the Circuit Court of

Shenandoah County (trial court). Husband asserts that the trial court erred in its equitable

distribution decision by awarding Kimberly R. Brake (wife) $144,966.33 as her marital share of

husband's ownership interest at his law firm, Lenhart Obenshain, P.C. (the law firm). Husband also

asserts that the trial court erred by (1) incorrectly valuing his interest in the law firm; (2) failing to

consider the tax consequences of requiring him to pay wife $144,966.33, contending that the only

existing asset from which he could satisfy the monetary award was his 401(K) retirement account;

(3) refusing to allow him to satisfy wife's equitable distribution award from his 401(K) by a

qualified domestic relations order (QDRO); and (4) requiring him to satisfy the equitable

distribution award to wife by June 30, 2015. For the following reasons, we affirm the judgment of

the trial court.

———————————

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

Husband and wife married on June 24, 2000 and separated on August 19, 2011.[1]  Husband is an attorney and, during the marriage, acquired a 10% ownership interest in the law firm.  Prior to trial, the parties reached a settlement on all issues, except the equitable distribution of husband's interest in the law firm.  At trial, each party presented expert witnesses who valued husband's interest in the law firm.  Both experts explained that there were three approaches to valuing a business:  (1) the income or excess earnings approach; (2) the asset or net-asset approach; and (3) the market or contract approach.  Neither expert thought that the income approach was appropriate in this case.  Husband's expert, Stuart A. Rosenberg, testified that the market approach, using the prior transactions method, was the best approach.  Using that approach, Mr. Rosenberg valued husband's interest in the law firm at $20,000.  Mr. Rosenberg noted that the law firm's Shareholder Agreement provided that, if husband left the law firm or returned his shares to the law firm, he would receive $20,000 for his interest in the law firm.

Wife's expert, Clifton A. Rutherford, testified that the net-asset approach was the best method to value husband's interest in the law firm.  Using that approach, Mr. Rutherford testified that the value of husband's interest in the law firm was $308,439.  He opined that the market approach was not the best approach to use because of the small size of the law firm.  He stated that husband's 10% share in the law firm represented more than the $20,000 value husband's expert had fixed, noting that husband's 10% share earned him a portion of the law firm's profits in the form of quarterly distributions and/or bonuses.  He noted that husband received a bonus distribution of $124,000 shortly before trial began.

---

[1] The only issue before this Court is the valuation of husband's interest in the law firm and how and when the marital share is to be paid to wife.  Accordingly, we limit our recitation of the evidence leading to the parties' divorce.

The trial court found wife's expert to be more persuasive and valued husband's interest in the law firm at $308,439. It awarded wife $144,966.33, or 47% of husband's interest in the law firm, because "there was slight waste of marital assets" by wife. Initially, the trial court ruled that husband should pay wife her share of the equitable distribution award within ninety days of December 31, 2012, the date of its letter opinion. On February 13, 2013, husband filed a motion for reconsideration of the trial court's equitable distribution award. He asked the trial court to reconsider its determination of the value of his interest in the law firm, as well as to reconsider how and when he should pay wife for her marital share of his interest in the law firm. In response to husband's motion to reconsider, the trial court modified the payment schedule in its order, permitting husband the option to pay wife either (a) by lump sum on or before June 30, 2013, or (b) by periodic payments of $50,000 plus interest by June 30, 2013, $50,000 plus interest by June 30, 2014, and the remaining balance plus interest by June 30, 2015. The trial court entered a final decree of divorce, encompassing its equitable distribution ruling, on June 10, 2013. This appeal followed.

## II. ANALYSIS

On appeal, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994).

### A. Valuation

Husband argues that the trial court erred in valuing his interest in the law firm at $308,439 because wife's expert made inaccurate assumptions in his report.[2] This Court has previously held

---

[2] Wife argues that husband did not preserve this issue pursuant to Rule 5A:18. However, we note that husband raised this issue in his motion to reconsider and as an objection to the final decree. Additionally, the trial court considered and ruled on the motion to reconsider which is required for preservation of the issue on appeal. See Brandon v. Cox, 284 Va. 251, 736 S.E.2d 695 (2012). In a bench trial, an appellant can preserve issues for appeal in a motion to strike, in

that "the value of property is an issue of fact, not of law." Howell v. Howell, 31 Va. App. 332, 340, 523 S.E.2d 514, 518 (2000) (valuing husband's partnership interest in his law firm).

> In Bosserman v. Bosserman, 9 Va. App. 1, 384 S.E.2d 104 (1989), this Court held that "[t]rial courts valuing marital property for the purpose of making a monetary award must determine from the evidence that value which represents the property's intrinsic worth" to the parties. Id. at 6, 384 S.E.2d at 107. "Intrinsic value is a very subjective concept that looks to the worth of the property to the parties." Howell, 31 Va. App. at 339, 523 S.E.2d at 517.

Wright v. Wright, 61 Va. App. 432, 457, 737 S.E.2d 519, 531 (2013).

Wife's expert calculated husband's interest in the law firm by using each of the three methods for valuing his interest in the law firm. Using the market approach, he noted that previous shareholders who left the law firm received $20,000, their initial investment in the law firm, pursuant to the Shareholder's Agreement. However, wife's expert disagreed with husband's expert that the market approach best reflected husband's interest. Wife's expert noted that, shortly before trial, husband received a bonus of $124,000 for his annual distribution share of the law firm's profits. Given that husband received that bonus because of his shareholder status, wife's expert concluded that $20,000 did not accurately reflect the intrinsic value of husband's interest in the law firm.

Wife's expert determined that the net-asset method was the most appropriate method to value husband's economic interest in the law firm, and relied on the law firm's financial reports to calculate husband's interest. Under the net-asset approach, wife's expert considered the assets and liabilities of the law firm and concluded husband's interest in the law firm to be $308,439. Husband argues on appeal that wife's expert erroneously applied an inaccurate realization rate of collection in discounting the law firm's account receivables and work in progress. The trial court

---

closing argument, in a motion to set aside the verdict, or in a motion to reconsider. Lee v. Lee, 12 Va. App. 512, 515-16, 404 S.E.2d 736, 738 (1991) (*en banc*).

considered husband's expert witness' argument in its letter opinion and found wife's expert more persuasive. The trial court noted during the hearing that

> I understand the $20,000, but it seems to be the buy-in, the buy-out. But the intrinsic value of that share, you say, is only $20,000. But it's enabled him to get bonuses and more earned income and $124,000 and other things that seem to make his share more valuable than $20,000, just from a common sense, logical thing.

A trial court may "choose among conflicting assessments of value as long as its finding is supported by the evidence." McDavid, 19 Va. App. at 413, 451 S.E.2d at 718. Here, the trial court found that the report of wife's expert was "thorough, detailed in analysis, well-reasoned, and more credible than" the report of husband's expert.[3]

Husband further asserts that the trial court erred in not crediting the testimony of William Shmidheiser, who was a shareholder and former managing partner at the law firm, whose testimony as to firm collections contradicted that of wife's expert. Shmidheiser testified that the collection rates used by wife's expert for accounts receivable and work in progress were inaccurate. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). In its letter opinion, the trial court thoroughly detailed the differing expert

---

[3] Husband cites Blue Ridge Serv. Corp. v. Saxon Shoes, Inc., 271 Va. 206, 213, 624 S.E.2d 55, 59 (2006), and Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990), in support of his argument that the trial court erred in relying on the opinion of the wife's expert. Those cases, however, involve the admissibility of an expert opinion which is based on facts that have not been established by the evidence. Here, husband stipulated to the admissibility of wife's expert's opinion. In doing so, he thus stipulated that there was a sufficient foundational basis for that opinion. Accordingly, we must accept the fact that the expert's opinion was properly before the trial court and consider only the weight the trial court accorded to that opinion.

witnesses' opinions and found the wife's expert to be more persuasive. Accordingly, we hold that the trial court did not err in valuing husband's interest in the law firm at $308,439.

### B. Distribution of the Award

Husband additionally argues that the trial court abused its discretion by ordering him to pay wife her equitable distribution award by either (a) a lump sum payment by June 30, 2013, or (b) in three annual installment payments, with interest, by June 30, 2015. He also contends the trial court failed to consider the tax consequences of his paying wife $144,966.33 because his only asset from which to satisfy the award was his 401(K). He asserts that the trial court should have permitted him to pay wife's share through a QDRO which would not take effect until husband's retirement.

"[A] trial court has broad discretion in determining the equitable distribution of the marital property so long as the court uses the guidelines set forth in Code § 20-107.3 and the evidence supports the court's decision." Kaufman v. Kaufman, 12 Va. App. 1200, 1206-07, 409 S.E.2d 1, 5 (1991). On appeal, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid, 19 Va. App. at 407-08, 451 S.E.2d at 715.

Among the factors in Code § 20-107.3(E) that a trial court is required to consider in making an equitable distribution award are the tax consequences of that award to the parties.

> Subsection E(9) requires only that the trial court *consider* tax consequences when formulating an equitable distribution award. What weight, if any, to assign to this factor in the overall decision lies within the trial court's sound discretion. Under settled law, "the trial court *must* consider each of the statutory factors, but *may* determine what weight to assign to each of them."

Owens v. Owens, 41 Va. App. 844, 859, 589 S.E.2d 488, 496 (2003) (quoting Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003) (emphasis added)).

In making its equitable distribution award, the trial court specifically found: "There is no tax consequence in granting wife her marital share of the ten percent interest in [the law firm]." Husband asserts on appeal that there would be tax consequences if he were to withdraw funds from his 401(K) in order to pay wife. He notes that the trial court found his 401(K) was a liquid, marital asset, whereas his ten percent interest in the law firm and the parties' real estate were non-liquid, marital assets. He contends the trial court erred in not permitting him to pay wife her share of the equitable distribution by use of a QDRO because that method of payment would eliminate the penalties and tax implications that would result from his withdrawing cash from his 401(K).

During the hearing, the trial court never directed or suggested that husband withdraw funds from his 401(K) to pay wife the equitable distribution award. The trial court noted several times that husband had recently received a bonus of $124,000 and that, as a shareholder in the law firm, he would be entitled to future distributions. Further, the trial court asked counsel, "But where . . . is the law that says the [c]ourt has to consider whether he has an ability to pay it, whatever it is?" Husband failed to produce any legal basis in support of his argument.

In denying husband's motion asking it to reconsider its equitable distribution award, the trial court did not order husband to pay wife by way of a QDRO. However, it did extend the deadline for husband to pay wife her share of the equitable distribution award, giving husband the option of paying the full amount by June 30, 2013 or paying in three annual installments, plus interest, by June 30, 2015.[4] Our review of the record on appeal does not establish that the

---

[4] On appeal, wife argues that husband has liquid assets, other than his 401(K), from which he can pay her for her share of husband's interest in the law firm. The record reflects that husband received a $124,000 bonus within months of the hearing. In his reply brief, husband lists numerous obligations which he is paying with his $124,000 bonus. Husband's argument that he does not have liquid assets from which to pay wife was not made to the trial court during closing argument or in husband's motion to reconsider. Accordingly, this Court will not consider this argument on appeal. See Rule 5A:18; Ohree v. Commonwealth, 26 Va. App. 299,

trial court abused its discretion in applying the statutory factors in Code § 20-107.3 when determining its equitable distribution award. We conclude that the trial court did not err in denying husband's motion for reconsideration, except for the method of payment.

## III. CONCLUSION

For the foregoing reasons, the Court affirms the judgment of the trial court.

<u>Affirmed.</u>

---

308, 494 S.E.2d 484, 488 (1998) (We "will not consider an argument on appeal which was not presented to the trial court.").

McCullough, J., dissenting.

I respectfully dissent on one point: whether the court should have credited wife's expert's valuation of husband's interest in the firm. In my view, the record establishes that his conclusions were founded on a mistaken premise. Wife's expert explained that, in valuing the firm, he calculated a collection rate that was based on accounts receivable minus write offs. He explained as follows:

> Now, everybody knows that you're not going to collect a hundred percent of your accounts receivable, so it's important to determine what the write-off percentage is.
>
> On Exhibit 11, we went through and took their write-offs for the five-year period under review and determined that it was only 1.81 percent, so they actually did a pretty good job of collecting everything that they billed.

In other words, wife's expert extrapolated from the reports provided by husband's firm that the firm collected over 98% of what it billed. The firm's former managing partner, Mr. Shmidheiser, explained why this conclusion – implausible on its face – was mistaken. Shmidheiser's testimony was uncontroverted that the write offs on the exhibit in question represent *only* client expenses that have been advanced but have gone uncollected: items like court reporter fees, mileage fees, or expert witness fees. He further explained that these write offs did *not* include hours that had been billed but not collected. That figure, he testified, would be "much, much larger." Therefore, the discount of the firm's accounts receivable should have been greater than the one wife's expert applied. What the record reflects, is not a "battle of experts" for the trial court to sort out but rather an expert opinion that is premised upon a demonstrably erroneous factual assumption, *i.e.*, that the paltry write offs in the documentation provided by husband's firm included write offs of hours billed but not collected. They did not.

It must be acknowledged that husband stipulated to the admissibility of the expert's report and that the challenge to wife's expert on this issue was crystalized for the trial court

through a motion to reconsider. While this strategy is not without its risks, see Brandon v. Cox, 284 Va. 251, 736 S.E.2d 695 (2012) (holding that a motion to reconsider did not preserve a point for appellate review where the trial court did not have the opportunity to rule on the motion), here, the trial court did rule on husband's motion to reconsider. The issue, therefore, was brought to the trial court's attention for corrective action and husband's argument is not procedurally defaulted. See Vasquez v. Mabini, 269 Va. 155, 161-63, 606 S.E.2d 809, 812-13 (2005) (upholding a delayed objection to expert testimony and citing to the purpose of the contemporaneous objection rule, which is to enable trial courts to intelligently rule on an objection while there is still time to correct the error).

To the extent wife argues that some mysterious documentation undergirds her expert's reports, the record refutes this contention. The documents wife's expert relied upon were provided to him by Mr. Shmidheiser, were discussed during the expert's as well as Shmidheiser's testimony, and constitute part of the record.

Accordingly, I would reverse and remand.