COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and AtLee
Argued at Richmond, Virginia


MEGAN BURGESS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0751-18-2                      JUDGE RANDOLPH A. BEALES
                                                    JANUARY 22, 2019
PAUL BURGESS


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge

Shawna L. Stevens (White Stevens Perry, LLC, on brief), for
appellant.

No brief or argument for appellee.


Megan Burgess ("wife") appeals from a March 27, 2018 final decree of divorce granting

Paul Burgess ("husband") a divorce and adjudicating the matters of equitable distribution and

attorney's fees.  She assigns error to a number of aspects of the trial court's final order, arguing that

the trial court erred in:  (1) failing to provide her with an "offset of the values of the marital

vehicles" awarded to husband; (2) failing to "equalize the parties' accounts"; (3) failing to order

husband to pay for various post-separation debts; (4) "ordering the parties to equally split the equity

or debt on the former marital residence without recognizing [wife's] post-separation reduction in the

principle [sic] balance of the mortgage"; (5) "denying [wife's] request to be reimbursed for the

$35,000.00 gifted to her as an advance of her inheritance from her parents"; (6) denying her request

for attorney's fees; (7) ordering the parties to share equally in the cost of the court reporter; and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(8) ordering her to reimburse husband for 50% of the cost of obtaining the transcripts for the October 17, 2017 hearing.

## I. BACKGROUND

On appeal, we are required to view the facts in the light most favorable to husband because he was the prevailing party before the trial court. See Wright v. Wright, 61 Va. App. 432, 451 (2013). So viewed, husband and wife were married on May 29, 1993, and separated on September 1, 2014. They had three children during the marriage. During the marriage, wife was primarily a stay-at-home mother although she did make approximately $100 per month teaching dance lessons. According to the trial court's findings of fact, wife made "the majority of the non-monetary contributions to the well-being of the marriage" while husband, whose annual salary was approximately $207,000, "provided the majority of the monetary contributions" to the marriage.

On March 1, 2016, husband and wife entered into a custody and support agreement settling the matters of child custody, visitation, child support, and spousal support. The agreement was incorporated into an order of the court on August 11, 2016. Pursuant to that agreement, husband and wife agreed that they would share legal custody of the remaining minor children while wife would retain primary physical custody. Husband agreed to pay wife child support for the minor children and $4,000 per month in spousal support.[1]

On June 8, 2016, husband filed a complaint for divorce on the grounds that the parties had been separated in excess of one year. Wife filed a counterclaim for divorce, asserting the same grounds, but alleging a different date of separation.

---

[1] At the time the final divorce decree was entered, only one child had not reached the age of majority.

On July 11, 2016, wife moved for *pendente lite* relief, asking for an order granting her exclusive possession of the marital residence, ordering husband "to pay for all marital debt, including the mortgage on the marital residence," and requesting attorney's fees and costs. After a hearing, the trial court awarded wife exclusive use and possession of the marital residence, but denied her request for husband to pay any portion of the mortgage. The court ordered husband to pay $7,500 in attorney's fees.

On October 17, 2017, the parties appeared before the Honorable William H. Ledbetter, Jr. to address the grounds for divorce, equitable distribution, and attorney's fees. The trial court also received evidence on February 9, 2018, to permit wife's expert witness, an appraiser, to testify regarding the value of the marital home. Judge Ledbetter presided over the October 17, 2017 hearing while Judge Ellis presided over the February 9, 2018 hearing. Judge Ellis reviewed the evidence, authored the letter opinion, and signed the final decree of divorce.

### The Marital Residence

Husband and wife both retained expert appraisers to testify as to the value of the marital residence. Both experts agreed that there were issues with the residence and that its condition made it attractive mainly to investors and "flippers." Husband's expert appraised the property at $335,000 subject to "the extraordinary assumption that there are no foundation issues" while wife's expert appraised it at $230,000, based on a similar assumption.

In a letter opinion following the hearings, the trial court stated that it found "both real estate appraisers highly credible." Although wife testified that she wanted to remain in the marital residence, because the appraisals were "at such variance and both contain[ed] a highly questionable assumption," the trial court concluded that it was "without the ability to determine the value of the home accurately (based upon the evidence presented) other than by letting the market do so." Therefore, the trial court ordered the parties to place the marital residence on the

market, split the mortgage until the property was sold, and then divide the proceeds of the sale equally. The trial court also provided wife the option to remain in the home if she notified the trial court of her desire to stay in the residence. If wife chose to remain in the marital home, she was required to relieve husband of all liability for the marital residence.

## Vehicles

The parties jointly owned three vehicles – a 2005 Hyundai Elantra, which was driven by their adult daughter, a 2009 Toyota Camry driven by their adult son, and a 2012 Chrysler Town and County minivan, which was in wife's possession. They also owned a utility trailer.

Husband, who testified that he had purchased a 2005 Jaguar after the separation with his separate funds, also testified that he wanted the children to be able to continue driving the Elantra and the Camry. He also stated that he would be willing to retitle the vehicles in the children's names and assist them with the insurance and other car expenses while they were in college. Wife testified that she wanted husband to be awarded the Elantra and the Camry because he could help the children pay for the expenses. Wife also testified that she had paid $4,717 in car payments for the Chrysler, and she wanted to be reimbursed by husband for that amount. She also testified that she wanted to be awarded the utility trailer.

The trial court found that the Elantra and the Camry were marital property and awarded those vehicles to husband. It determined that the Jaguar was husband's separate property. The trial court found that the Chrysler was marital property, awarded it to wife, and ordered her to assume all indebtedness on the vehicle. The trial court also awarded wife the utility trailer.

## Money Received from Wife's Parents

Before the trial court, wife contended that her parents provided her $35,000 as a gift during the marriage as an advance on her inheritance and that she could trace that money to the parties' martial residence.

Wife's father, Bruce Grant, testified that he and wife's mother, Mary Kathryn Grant, gave wife $35,000 in 1996. He testified that $25,000 was for the down payment on husband's and wife's first home because "in order for them to get a loan, they had to make a substantial down payment. We provided that . . . ." He also testified that another $10,000 was given "to make improvements on the house that they purchased" and that both amounts were gifts to wife alone and not gifts to husband. Mr. Grant also stated that he and Mrs. Grant signed a letter in February 2016, which stated that the money they had given approximately twenty years earlier was "intended as advanced access to [wife's] future inheritance." He admitted that this letter was signed after wife had filed an action for support against husband. On cross-examination, Mr. Grant was asked, "You gave your daughter that money so she [wife] and her husband could buy a house together, right?" Mr. Grant responded, "I would say that is true, but it was a gift to my daughter, not to her husband."

Mrs. Grant, wife's mother, testified that, for the first home husband and wife purchased in 1996, Mr. and Mrs. Grant "gave them [wife and husband] $25,000 towards the down payment, so they wouldn't have to pay for the insurance and all that sort of thing." When asked directly whether it was her intention to gift the money to wife or to both husband and wife, wife's mother stated, "It was our intention to make a purchase of the house possible." She also testified that she and Mr. Grant gave them another $10,000, although she could not recall for what that money was to be used. Both Mr. and Mrs. Grant testified that they knew that the house was going to be purchased jointly.

Wife also testified that the money from her parents was an advance on her inheritance. She testified that her parents wanted her to use the money instead of struggling because husband and wife "were determined to be a one income household."

The trial court found, "[a]fter considering the testimony of the Wife and her parents regarding the $35,000" that the money was "a gift to both Wife and Husband in order for them to purchase and renovate their first marital home." Accordingly, the trial court found that the $35,000 was "marital property subsumed in the value of the home" and it did not award $35,000 to wife.

### Moving of Marital Funds and Payment of Marital Debts

At the hearing, both parties accused each other of committing waste by improperly moving and spending marital funds. It is undisputed that in June 2014, wife began moving marital funds and putting them into a separate account titled in her name that she opened at Barclays Bank. Husband testified that wife initially took $115,000 and that then she took an additional $23,355.34 between February and August of 2015. She also reportedly placed $13,000 from the proceeds of an insurance claim on the marital residence that she received after the separation into that account.[2]

Husband testified that, after being "served with papers"[3] by wife, he decided he needed to "secure all the joint accounts." In or around April 2015, he closed the joint accounts and moved $96,610 of marital funds (which husband and wife had received as the result of refinancing the marital home) into his separately titled account. Husband testified that, after closing the accounts, he voluntarily paid wife $4,500 in monthly support until they signed the custody and support agreement. Husband testified that he had $75,000 remaining of the marital funds he had removed and that, according to information he received from wife's discovery responses, wife had approximately $20,000 remaining of the marital funds she had removed.

_____

[2] Husband testified that he believed the amount was $17,000 while wife testified that she only received $13,000. However, the trial court found the amount was $13,000.

[3] It is not clear from the record exactly to what papers husband is referring.

Wife admitted that she removed marital money, but she stated that she did not spend the money until after husband cut off her access to the marital accounts. She testified that, when she lost access to those marital accounts, she used the money she removed to pay the household expenses for April and May 2015, property taxes on the vehicles, and to take a trip with the children to Scotland. Wife testified – and husband denied – that husband had agreed to take this trip, but backed out of it at the last minute. She also used the funds to make renovations to the marital residence and to pay $25,000 in attorney's fees.

The trial court found that, despite both parties' having moved marital funds into separately titled accounts, "neither Husband nor Wife wasted these funds to the prejudice of the other." The trial court ordered husband to pay wife $2,315 for charges he made on wife's credit card after the separation. However, the trial court declined to order husband to reimburse wife for the personal property taxes or for the trip that wife and the children took to Scotland in 2015.

Post-Separation Renovation and Refinancing of the Marital Home

It is undisputed that, after the parties separated in 2014, they agreed to refinance the house in order to make repairs to the marital residence. The refinance took place in December 2014, and resulted in their mortgage increasing from $124,000 to approximately $238,000.

In a letter provided to the bank that authorized the refinance, husband and wife agreed that they would use the proceeds to remodel the kitchen and bath and replace the HVAC system and the roof. However, wife testified that she undertook renovations to the entire first floor, replaced the fence, and proceeded with other repairs that "weren't planned." Wife testified that, because husband had taken the money from the refinance that was supposed to be used for the renovations to the home, she was forced to use the marital money that she had placed into her account at Barclays. She testified that she spent $72,000 on the renovations and that the house still needed an additional $59,000 in repairs.

The trial court found that husband had approximately $75,000 remaining from the refinance in his separately titled account while wife had approximately $18,000 of marital funds left in her separately titled account. In its letter opinion, the trial court awarded each party these respective remaining amounts, finding that this would "balance the equities between the parties" considering "Wife's substantial expenditures from marital funds including, but not limited to debatable home repairs, a family trip to Scotland, and the Wife's $23,355.34 transfer to her account during the parties' separation."

## Attorney's Fees and Other Costs

Both husband and wife requested attorney's fees before the trial court. The trial court denied both requests, finding "both parties responsible for perpetuating this litigation." It also ordered the parties to split the cost of the fees for the court reporter and required wife to reimburse husband for fifty percent of the cost of the court transcripts of the October 17, 2017 hearing.[4]

The trial court issued a letter opinion on February 27, 2018, and entered a final decree of divorce in a March 27, 2018 order, from which wife now appeals.

## II. ANALYSIS

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161 (1990). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or

---

[4] Husband paid to obtain a transcript of the October 17, 2017 hearing for Judge Ellis's review.

unsupported by the evidence.'" Wright, 61 Va. App. at 450 (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08 (1994)).

It is this standard of review and the well-settled principle that "Virginia law 'does not establish a presumption of equal distribution of marital assets'" that controls the outcome of most of wife's assignments of error. See Robbins v. Robbins, 48 Va. App. 466, 480 (2006) (quoting Watts v. Watts, 40 Va. App. 685, 702 (2003)). In assignments of error (1) through (4), wife essentially contends that the trial court not only erred because the sum total of the parties' property should have been equally divided but also because each sub-category of property should have been equally divided.

In wife's first assignment of error, she contends that the trial court erred because the award to husband of the Elantra and the Camry was an award of "a value of almost double of that of the Wife" and because the trial court did not order husband to pay wife $4,717 to compensate her for making car payments on the Chrysler after the separation. She contends that she is entitled to an offset of $2,806 to "equalize the values of the marital vehicles awarded to the parties." Because the trial court was under no obligation to "equalize" the distribution, we find no error.[5] Furthermore, we note that the trial court's division was in keeping with wife's request during her testimony regarding the Elantra and the Camry that she wanted husband to "take those over" because he would allow the adult children to keep the vehicles and help them with the expenses.

Wife's second, third, and fourth assignments of error suffer from the same flaw as her first. In her second assignment of error, wife contends that that trial court "abused its discretion by awarding [husband] approximately $75,000.00 of the parties' remaining marital funds, while

_____

[5] Wife also contends that this Court must reverse because the trial court did not assign value to the vehicles. However, it is clear from the letter opinion that the trial court divided the vehicles according to the parties' wishes. Therefore, we find no error in the trial court's decision.

awarding [wife] approximately $18,000.00, without an offset of funds to *equalize* the parties' accounts or a reimbursement to [wife] for at least half of the $72,000.00 expended on repairs on the marital residence." (Emphasis added.) Once again, under settled principles of Virginia law, the trial court had no obligation to "equalize" the distribution of the assets between the parties, and we cannot say that the distribution performed by the trial court was an abuse of discretion simply because it may have been unequal. Although the trial court found that neither party committed waste, it questioned wife's spending choices, noting her "substantial expenditures from marital funds including, but not limited to debatable home repairs, a family trip to Scotland, and the Wife's $23,355.34 transfer to her account during the parties' separation." The trial court clearly concluded that the *equitable* outcome was to award each party the amount remaining of the marital funds that they had improperly removed, regardless of the amount each party had remaining.[6] In addition, we find no merit to wife's argument that she is entitled to reimbursement for the repairs to the marital residence, given that she spent *marital* money on the repairs. Therefore, we find no error.

In wife's third assignment of error, she contends that the trial court "abused its discretion by not ordering [husband] to reimburse [wife] for post-separation debts, including, but not limited to, the parties' personal property taxes and the Scotland trip." She "requests that she

_____

[6] Wife contends that this Court must reverse the decision of the trial court because the trial court was incorrect about the amount of marital money remaining in her account. Wife argues that she presented a bank statement from her account at Barclays showing that it only contained $6,836.88 – not the $18,000 found by the trial court. However, because we conclude that the trial court was awarding the parties the remainder of the marital money they secreted, the fact that it may have been incorrect about the actual amount remaining is irrelevant. The trial court clearly arrived at its approximation by reviewing the evidence. Both husband and wife testified that wife had removed approximately $115,000 of marital funds. Wife was then reimbursed $13,000 from an insurance claim. Wife spent approximately $85,000 on renovations to the marital residence and $25,000 on attorney's fees. This would have left her with approximately $18,000 in her account. The fact that wife spent even more marital money than the trial court accounted for does not help her cause before the trial court or now on appeal.

receive $4,350.00 to equalize the post-separation marital debt that she absorbed." In her fourth assignment of error, wife contends that the trial court erred when it awarded husband equal equity in the marital home even though wife reduced the principal of the mortgage from $238,000 to $220,000 and when it failed to credit her with the "post-separation renovation costs."[7] However, the trial court was not required to "equalize" these debts and expenses. Likewise, to the extent that wife used the money she secreted to pay for these expenses, wife fails to provide authority for her proposition that she should be credited for spending *marital* money on marital assets and debts. See von Raab v. von Raab, 26 Va. App. 239, 250 (1997) (finding no error in trial court's refusal to award Mr. von Raab credit for post-separation mortgage payments on marital property where he failed to establish that he used separate funds to make the mortgage payments).

In assignment of error five, wife argues that the trial court "abused its discretion by denying [wife's] request to be reimbursed for the $35,000.00 gifted to her as an advance of her inheritance from her parents." She contends that both of wife's parents testified that the $35,000 was a gift to her and that husband failed to present evidence to the contrary.

"[W]here evidence is presented that property was acquired during the marriage, the trial judge must conclude that it is marital property unless adequate evidence is produced to establish that it is separate property as defined in Code § 20-107.3(A)(1)." Lambert v. Lambert, 6 Va. App. 94, 99 (1988). Pursuant to Code § 20-107.3(A)(1), "separate property" "is . . . all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party." The issue of whether wife's parents intended to make a gift to

---

[7] Wife's assignment of error does not address the fact that, if she chose to remain in the marital home and refinance the home to relieve husband of liability, as the trial court's order permits, she was under no obligation to compensate him for any portion of the equity in the house. Husband objected to this "award of all equity in the former marital residence to [wife] via refinance," but he did not appeal that aspect of the final order in a cross-appeal to this Court.

wife or to husband and wife jointly is a question to be determined by the finder of fact. See

Cirrito v. Cirrito, 44 Va. App. 287, 305 (2004) (noting that donative intent is a question of fact).

In its letter opinion, the trial court stated that "[a]fter considering the testimony of the

Wife and her parents regarding the $35,000," the trial court found that the money was "a gift to

both Wife and Husband in order for them to purchase and renovate their first marital home." In

addition to the fact that both Mr. and Mrs. Grant testified that they knew the house was going to

be purchased jointly by husband and wife, there is credible evidence in Mrs. Grant's testimony to

support the trial court's finding of fact that it was a gift to husband and wife jointly. Mrs. Grant

stated that she and Mr. Grant "gave *them* $25,000 towards the down payment, so *they* wouldn't

have to pay for the insurance and all that sort of thing." (Emphasis added.) When asked directly

for whom the money was a gift, she stated, "It was our intention to make a purchase of the house

possible." Although a different factfinder may have reached a different conclusion, credible

evidence supports the trial court's finding of fact that the money was a gift to both parties,[8] and

we cannot now say on appeal that the trial court erred.[9]

In her sixth, seventh, and eighth assignments of error, wife contends that the trial court

erred in denying her request for attorney's fees, ordering the parties to share equally in the cost

of the court reporter, and ordering wife to reimburse husband for one half the cost of obtaining

transcripts of the October 17, 2017 hearing. In support of each of these assignments of error, she

argues that the "disparity in the parties' respective incomes" required the trial court to find in her

favor.

---

[8] Furthermore, the issue of the gift tax annual exclusion was raised at trial. In 1996, the federal gift tax annual exclusion was $10,000 per donee. If Mr. and Mrs. Grant had made the $35,000 in gifts in 1996 only to their daughter ("wife"), the annual gift tax exclusion would have been exceeded – but not if the gifts were from Mr. and Mrs. Grant to both husband and wife.

[9] Judge Ledbetter, who presided over the hearing where the testimony was given regarding the $35,000, clearly reached the same conclusion as Judge Ellis.

"We will reverse the trial court's decision whether to award attorney's fees to a party only where the record shows a clear abuse of discretion." Johnson v. Johnson, 56 Va. App. 511, 519 (2010) (quoting West v. West, 53 Va. App. 125, 136 (2008)). Although husband's income is significantly greater than wife's, we cannot say that the trial court abused its discretion in making these awards and in denying wife's request that husband pay her attorney's fees. The trial court found that both parties were "responsible for perpetuating this litigation," and it noted that husband had already contributed $7,500 towards wife's attorney's fees pursuant to the *pendente lite* order. In addition, wife now requests attorney's fees that she incurred in her appeal. Viewing the overall record, we deny her request. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996); Rule 5A:30(b).

Similarly, because the trial court made a finding of fact that both parties perpetuated the litigation, we find no error in the trial court's conclusion that the parties should share equally in the cost of the court reporter and the transcript.

### III. CONCLUSION

In short, wife's arguments on assignments of error (1) through (4) fail because they are premised on her contention that equitable distribution must not only be equitable but also must actually be equal – a contention at odds with well-settled Virginia law. With respect to her fifth assignment of error, although reasonable factfinders could differ, we cannot say that the trial court was plainly wrong in finding that the $35,000 from wife's parents was a gift to both spouses at the time it was made in 1996. Despite Mr. Grant's testimony at the hearing that the money Mr. and Mrs. Grant gave over twenty years earlier was meant as a gift only to their daughter, Mrs. Grant's testimony that they "gave them $25,000 towards the down payment" to allow them to purchase the house is credible evidence supporting the trial court's finding of fact. Finally, the trial court did not abuse its discretion in denying wife's request for attorney's fees, in

ordering wife to reimburse husband for half of the cost of the transcript, or in requiring the parties to share equally the cost of the court reporter.  The trial court found that both parties had been "perpetuating this litigation," and husband had already paid wife $7,500 for her attorney's fees.

For all of these reasons, we affirm the decision of the trial court and deny wife's request for the attorney's fees she incurred in her appeal.

Affirmed.
